**INTERSTATE FIRE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**John C. KIMBROUGH, Defendant–Appellant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Nov. 5, 1992.

Application for Permission to Appeal Denied by Supreme Court March 22, 1993.

Jere Fones, Memphis, for plaintiff-appellee.

John C. Kimbrough, pro se.

CRAWFORD, Judge.

This is a suit for reimbursement of sums paid by a surety on certain bonds issued to secure the obligation of real estate developers for the cost of installation of various utilities in a new subdivision. Plaintiff, Interstate Fire Insurance Company, sued ten defendants but subsequently dismissed

the case as to seven defendants. After a nonjury trial, the court entered a money judgment for plaintiff against defendants, Security Investments, Inc., Frank J. Piecara, and John C. Kimbrough. Only John C. Kimbrough has appealed from the judgment.

Security Investments, Inc. (Security) is a corporation which was engaged in developing and subdividing land, which entailed the installation of utilities into the subdivision. Memphis Light, Gas and Water Division (MLGW) would extend the utilities into the subdivision to the individual lots under an arrangement whereby the developer would execute a promissory note to MLGW to cover the cost of the installation. The principal amounts of the MLGW notes were to be reduced through credits computed after annual inspection based on the number of residential hookups in the subdivision. The balance of the principal amount was to be paid by the end of five years in any event. Interest on the principal sum was computed on the remaining balance as the credits were given annually for the hookups. Security's obligation to MLGW was secured by a surety bond issued by Interstate. Security defaulted on the notes and Interstate was required to make payments to MLGW under the bond. Interstate, in turn, filed this suit to recover the amounts paid, plus interest.

Subsequent to the execution of the notes and bonds to MLGW, Security sold its interest in the property to Southeast Developments (Southeast), a partnership composed of Buxbaum, Bowie and Piecara. Southeast did not assume the obligation for the notes with MLGW or the bonds with Interstate. By real estate sales contract dated April 30, 1974, Southeast contracted to sell the real estate involved to the purchaser named in the contract, "Taylor–Kimbrough Bildors." The contract provides as pertinent to the issues before us:

\* \* \* \* \* \*

This contract is contingent upon purchaser obtaining satisfactory financing by May 15, 1974. If said contingency is satisfied closing to be on or before May 30, 1974.

\* \* \* \* \* \*

Seller warrants that he has contracted and bonded with Memphis Light, Gas & Water for installation of water, gas and underground electricity in Sections C, D & E and purchaser agrees to accept responsibility of the cost of maintaining said bonds at the expiration of one year from date of seller's responsibility until final release of these bonds.

The contract was signed as follows:

Taylor–Kimbrough Bildors

By s / Lloyd R. Taylor

By s / John C. Kimbrough
    Purchaser

Southeast Development

By s / R.B. Buxbaum
    Seller–Partner

The May 30, 1974 closing date was changed by interlination to June 7, 1974.

The contract also allowed the purchaser to designate another party to become the purchaser, but specifically required that the contracting party would not be relieved of any obligations under the contract. The financing referred to in the contract as a contingency was not obtained. On June 13, 1974, Southeast conveyed the 190 lots described in the April 30 contract to Fourteen Thousand Company (Fourteen Thousand), a partnership of two corporations, Taylor and Kimbrough Realty Company as one partner, and Kimbrough & Vance, P.C., as the other partner.

On June 13, 1974, representatives of the seller, Southeast, and the purchaser, Fourteen Thousand, met in the office of closing attorney, William Bartholomew. Multiple parties were involved and there were three separate law firms involved in document preparation and negotiations. Apparently, negotiations were lengthy, lasting for most of the day, and involved not only Southeast principals, Bowie, Buxbaum and Piecara,

but several representatives of the bank that had financed or held mortgages on the property. The partnership, Fourteen Thousand, came into existence on the date of the closing. The sale price and the land involved are identical to the provisions of the April 30, 1974, contract. However, the closing attorney testified that there was no mention made of the MLGW notes and Interstate's bond except to the extent that he was told by the parties that the bonds were not part of the transaction. No reference is made to the bonds or the notes in any of the closing documents.

Interstate's theory for recovery against Kimbrough is that the purchaser in the May 30, 1974, contract assumed the obligation for the MLGW notes and the Interstate bond, and that the named purchaser was Taylor–Kimbrough Bildors, a partnership composed of John Kimbrough and Lloyd Taylor. Interstate contends that the sale to Fourteen Thousand was made pursuant to the terms of this contract and Kimbrough, as a partner, is individually liable and pursuant to the terms of the contract cannot avoid the liability by transferring to a named designee. Kimbrough's theory in defense of the suit is that the contract expired by its express terms when the financing was not obtained in the time provided, and that the sale to Fourteen Thousand was totally independent of the May 30, 1974, contract. Kimbrough also contends that if the contract was found not to have expired, he nevertheless is not liable thereon because the named purchaser, Taylor–Kimbrough Bildors, is not a partnership, but merely a trade name for the corporation Taylor and Kimbrough Realty Company, which he and Lloyd Taylor owned.

The chancellor found that the sale to Fourteen Thousand was under the April 30, 1974, contract and that Fourteen Thousand was the designee of Taylor–Kimbrough Bildors, the purchaser. Apparently, the trial court also found that Kimbrough was liable as a partner in Taylor–Kimbrough Bildors, or as an individual signee of the contract.

Kimbrough's first and third issues presented for review will be considered together.

I. Whether the Court erred in giving the Real Estate Sales Contract any effect at all after its expiration on May 15, 1974.

\* \* \* \* \* \*

III. Whether the Court erred in finding Kimbrough liable when the property was sold to Fourteen Thousand Company in a separate transaction.

Interstate contends that Fourteen Thousand is the designee of Taylor–Kimbrough Bildors under the April 30, 1974, real estate sales contract and therefore, Kimbrough, as a partner in Taylor–Kimbrough Bildors is liable individually pursuant to the assumption agreement in the contract. Kimbrough contends that the April 30, 1974, contract expired under its own terms on May 15, 1974, because there was no financing obtained within the time allotted. He argues that the sale by Southeast to Fourteen Thousand was a separate transaction which was created by the negotiations that occurred on the date of the closing, June 13, 1974. Proof was introduced to this effect by Kimbrough, Bartholomew, the closing attorney, Vance, one of the principals in Kimbrough & Vance, P.C. and Yanna Kimbrough, a paralegal who was formerly Kimbrough's secretary. Interstate introduced proof from R.B. Buxbaum (then a party to the litigation and subsequently dismissed by Interstate) and the deposition testimony of Piecara to the effect that the closing date of the transaction was pursuant to the April 30, 1974, contract. Buxbaum's testimony was impeached by a prior inconsistent letter and affidavit. Interstate also introduced a paper writing styled, "Agreement," dated June 13, 1974, between Fourteen Thousand Company and Southeast Development concerning the completion of improvements on the property which specifically states as a premise:

WHEREAS, the parties to this Agreement entered into a contract of sale dat-

ed April 30, 1974 for the purchase of 190 residential lots in Green Grove Subdivision, hereinafter referred to as Project, for the purchase price of $1,168,500;

This document is signed by Kimbrough & Vance, P.C., by John C. Kimbrough, Jr., President.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

■ From our review of this record we cannot say that the evidence preponderates against the finding of the trial court that the June 13, 1974, closing was pursuant to the April 30, 1974 contract as modified.

Kimbrough's second issue for review is whether the trial court erred in finding Kimbrough liable as a party to the May 30, 1974, contract.

Kimbrough asserts that Interstate, as a third party donee beneficiary of the contract, is subject to all the defenses that he has against the other party to the contract, seller-Southeast. In this connection, he notes that there are ambiguities in the contract which was prepared by Southeast partner, Buxbaum. He argues that the intended identity of the purchaser, as "Taylor–Kimbrough Bildors" raises an ambiguity as to the capacity in which Kimbrough signed the contract. He also points out that the contract provides "seller warrants that he has contracted and bonded with Memphis Light, Gas & Water," but that the uncontroverted proof from Southeast partners was that they never took any responsibility of any kind for the obligation to Memphis Light, Gas & Water, but that this obligation remained the obligation of Security. Finally, Kimbrough asserts that the contract is ambiguous in that it recites, "purchaser agrees to accept responsibility of the cost of maintaining said bonds at the expiration of one year from the date of

seller's responsibility." He argues that cost is not defined and also the ambiguity is further enhanced in that since the seller never took responsibility of any kind for the notes or bonds, there could be no obligation on the purchaser's part.

■ Kimbrough testified that Taylor–Kimbrough Bildors was a trade name which was used by the corporation Taylor and Kimbrough Realty Company. The testimony was corroborated by the testimony of several other witnesses. Mr. Buxbaum, the Southeast partner that primarily handled the transaction concerning the April 30, 1974 contract, testified at trial that the intended purchaser was a partnership in which Kimbrough was a partner. Previously, Buxbaum had executed an affidavit stating that the purchaser was a corporation. In response to interrogatories, he answered that he did not know the status of the purchaser, although it was his understanding that Kimbrough was *not* acting in an individual or partnership capacity in his connection with the contract. Buxbaum testified that he made the previous affidavit statement as an accommodation to Kimbrough and because he was afraid Kimbrough would become financially unable to complete his obligations to him and to his partner, Piecara. Interstate argues that parole evidence is not admissible to show that Taylor–Kimbrough Bildors was a trade name of Taylor and Kimbrough Realty Company. We must disagree. In *International House of Talent v. Alabama*, 712 S.W.2d 78 (Tenn.1986), the Supreme Court held that parol evidence was admissible to show the true identity of the party to a contract. The contract in this case indicates that the purchaser is not an individual, but makes no explanation of the entity, Taylor–Kimbrough Bildors, nor is there any designation for the signatures of Kimbrough and Taylor to the contract. Accordingly, it was proper for the court to hear testimony concerning the true identity of the purchaser under the contract.

■ Kimbrough argues that Buxbaum's contradictory testimony has the effect of

cancelling out his testimony in toto. His testimony in the pretrial discovery deposition and the testimony at trial is to the effect that the purchaser in the May 30, 1974, contract was a partnership of which Kimbrough was a partner. Before the litigation began, Buxbaum had stated in an affidavit that the purchaser under the contract was the corporation Taylor and Kimbrough Realty Company. After the suit was filed, Defendant Buxbaum, in responding to an interogatory from Kimbrough, stated that he did not understand that in the April 30, 1974, contract Kimbrough and Taylor were contracting as individuals or partners. Although Buxbaum's testimony was not cancelled, the prior sworn inconsistencies must have an adverse effect on the weight, faith and credit accorded to the testimony. Interstate relies heavily on Buxbaum's testimony to establish that Taylor–Kimbrough Bildors as a partnership purchased under the contract. Apparently, the only other testimony offered by Interstate concerning this issue was the deposition testimony of Piecara. He stated that he thought the purchaser was "Kimbrough and Taylor." This, of course, lends very little to the inquiry as it could mean the corporation as easily as it could mean Kimbrough and Taylor in some other capacity.

■ Contrasted with this testimony is the testimony from Kimbrough to the effect that there was no entity of Taylor–Kimbrough Bildors and his income tax returns as exhibits corroborated this testimony. In addition, some significance could be placed on the manner in which Buxbaum prepared the contract in that he placed partner beside his signature, but did not put any designation beside the signature lines for John Kimbrough and Lloyd Taylor.

Kimbrough also introduced the testimony of Yanna Kimbrough who, during the time period involved, was his secretary and also his sister-in-law. She testified that Taylor–Kimbrough Bildors was a trade name that Taylor used for Taylor–Kimbrough Realty Company because "Bildors" is a prestigious identification for members of the Home Builders Association. She also testified that she had never heard of a partnership called Taylor–Kimbrough Bildors and to her knowledge no such partnership existed. Persuasive testimony was presented by William Bartholomew, attorney of the Memphis Bar. Bartholomew is a real estate lawyer and handled closings for Taylor and Kimbrough Realty Company. He testified that Taylor and Kimbrough Realty Company was a corporation and that occasionally they used the name "Bildors" in their operation. He testified that all of their properties for houses that they were building were in the corporate name, but that in some of their advertisements they were referred to as Taylor–Kimbrough Bildors, which was a common practice for builders who were members of the Home Builders Association.

■ The findings of the chancellor come to us in this nonjury case with a presumption of correctness. Any conflict in testimony requiring a determination of the credibility of witnesses rests in the first instance with the trial court and will be given great weight by the appellate court. *Haverlah v. Memphis Aviation, Inc.*, 674 S.W.2d 297 (Tenn.App.1984).

In the case at bar, the contract itself does not indicate the status of the purchaser. Testimony was introduced by the defendant, Kimbrough, that it was intended for the purchaser to be Taylor and Kimbrough Realty Company, a corporation. This testimony was corroborated initially by the affidavit of Buxbaum, a partner in the selling entity. In his later testimony at trial, as a defendant he recanted the previously given sworn statement concerning the purchaser under the contract. In addition to other testimony showing the purchase entity as a corporation, Kimbrough's testimony was corroborated by his income tax returns.

The uncontroverted testimony of William Bartholomew, an attorney at the Memphis Bar, is that he handled all of the real estate

closing transactions for Taylor and Kimbrough Realty Company, and that they never had a partnership, Taylor–Kimbrough Bildors; although, that name was used as a trade name in connection with the corporation's home building activities. Considering the evidence as a whole, and giving due deference to the chancellor's opportunity to observe the witnesses, we find that the evidence does preponderate against the chancellor's findings, and that the purchaser under the May 30, 1974 contract and the obligee to Interstate was the corporation, Taylor and Kimbrough Realty Company. Since the purchaser is the corporation, there is no showing of any individual liability on the part of Kimbrough.

Accordingly, the judgment of the trial court against appellant, Kimbrough, is vacated and plaintiff's complaint against Kimbrough is dismissed. The case is remanded to the trial court for further proceedings as may be necessary. Costs of the appeal are assessed against the appellee.

TOMLIN, P.J., W.S., and HIGHERS, J., concur.