IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

**GORDON BURKS,**

    Plaintiff-Appellant,

Vs.

**BELZ-WILSON PROPERTIES,
(a join venture, comprised of
BELZ INVESTMENT COMPANY,
SPENCE L. WILSON, ROBERT A.
WILSON, KEMMONS WILSON, JR.,
CAROLE A. WILSON-WEST and
DOROTHY E. W. MOORE), BELZ
INVESTMENT COMPANY, INC.,
a corporation; BELZ INVESTMENT
COMPANY, a partnership comprised
of PHILLIP BELZ, JACK A. BELZ
and KEMMONS WILSON;
WILBLETON GYMNASTICS,
INC., a corporation, and
PRIDE CONSTRUCTION COMPANY,
INC.,**

    Defendants-Appellees.

Shelby Law 45888
C.A. No. 02A01-9607-CV-00154



FILED

**May 22, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

_____

FROM THE CIRCUIT COURT OF SHELBY COUNTY
THE HONORABLE KAREN R. WILLIAMS, JUDGE

Mark Ledbetter of Memphis
Dan T. Bing of Memphis
For Plaintiff-Appellant

Richard Glassman and James F. Horner
Glassman, Jeter, Edward & Wade, P.C., of Memphis
For Appellees, Belz-Wilson Properties

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

    This is a negligence case involving the interpretation and application of a release.

Plaintiff, Gordon Burks, appeals from the order of the trial court granting summary judgment

to defendants, Belz-Wilson Properties[1] (a joint venture), Belz Investment Company[2] (a partnership), Spence L. Wilson, Robert A. Wilson, Kemmons Wilson, Jr., Carole A.Wilson-West, and Dorothy E. W. Moore.

This case was before the Court previously on Burks's appeal from the order of the trial court granting summary judgment to defendant, Pride Construction Company, Inc., and this Court affirmed the trial court. *See Burks v. Belz-Wilson Properties,* No. 02A01-9411-CV-00254, 1996 WL 84859 (Tenn. App. Jan. 2, 1996).

On May 4, 1991, Burks was injured when he attempted a back flip into a gymnastics pit at the Wimbleton Sportsplex in Memphis. He suffered cervical spinal injuries that left him paralyzed and disabled. Burks was attending a function that Crye-Leike Realty held for its employees and their family members called the Crye-Leike Olympics. The employees and families participated in various games and events including basketball, volleyball, running, and swimming. The gymnastics pit was used for an event called "Getting Out of the Pits," where agents rolled around in the foam rubber in the pit. Although gymnastics was not a scheduled event, many participants jumped and flipped into the gymnastics pit in between events. When Burks attempted a flip from a pommel horse into the pit, he was seriously injured.

One day before the event, Burks signed a release form that had the word "RELEASE" in bold and all capital letters at the top. Burks did not read the form before he signed it.

On May 1, 1992, Burks filed a complaint against the defendants in this appeal and others alleging that the defendants failed to warn users of dangers incident to the use of the gymnastics pit, that the defendants failed to properly design, construct, and maintain safe premises, and that the defendants failed to provide a gymnastics pit with adequate shock absorption or depth to prevent the serious injuries sustained by Burks. The complaint prayed for damages in the amount of $10,000,000.00. On February 22, 1994, Burks filed an amended complaint that alleged that the defendants were also grossly negligent.

Belz-Wilson Properties, Belz Investment Company, Spence L. Wilson, Robert A.

---

[1] Belz-Wilson Properties is a joint venture comprised of Belz Investment Company, Spence L. Wilson, Robert A. Wilson, Kemmons Wilson, Jr., Carole A. Wilson-West and Dorothy E.W. Moore.

[2] Belz Investment Company is a partnership comprised of Phillip Belz, Jack A. Belz, and Kemmons Wilson.

Wilson, Kemmons Wilson, Jr., Carole A. Wilson-West, and Dorothy E.W. Moore filed a motion to dismiss[3] on the grounds that "the cause of action . . . was released by the execution by the Plaintiff of a contract containing an exculpatory clause applicable to said Defendants."  On May 2, 1996, the trial court entered an order granting the motion, which stated that "by the execution of said Release, that the Plaintiff released these defendants from any claim of negligence not of a gross or wanton nature."

Burks has perfected this appeal, and the issue for review is whether the trial court erred in granting summary judgment to the appellees.  A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Tenn. R. Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn. App. 1992).  The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists.  *Byrd*, 847 S.W.2d at 210.  On a motion for summary judgment, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence."  *Id*. at 210-11.

In this case, the trial court granted the summary judgment solely on the existence of the release signed by Burks.  Therefore, the dispositive question for this Court is whether the release exonerates the appellees from Burks's claims of negligence.  This is a question of law for the Court.  *Rainey v. Stansell,* 836 S.W.2d 117, 118 (Tenn. App. 1992).

The release states as follows:

> I, Individually, in consideration of my participation in the CRYE-
> LEIKE Olympics and for other good and valuable consideration,
> the receipt and sufficiency of which is hereby acknowledged, I
> the undersigned, Intending to be legally bound, as broadly and
> inclusively as permitted by the laws of the State of Tennessee, for
> myself, my heirs, assigns, executors and administrators do hereby
> release, remise, waive, surrender, and forever discharge and to
> Indemnify and save harmless CRYE-LEIKE, Inc., CRYE-LEIKE
> Insurance Agency, Inc., CRYE-LEIKE of Mississippi, Inc.,
> CRYE-LEIKE Mortgage Company, Inc., CRYE-LEIKE Property

---

[3] Although styled as a motion to dismiss, the motion itself relies on the release and is also supported by other extraneous material.  The trial court treated the motion as a motion for summary judgment.

Management, CRYE-LEIKE Commercial Investment and Harold Crye and Dick Leike, Individuals, and WIMBLETON SPORTSPLEX, WIMBLETON GYMNASTICS, and all other sponsoring groups of the events herein, together with all of their officers, agents, officials, directors and employees, from any and all liability claims, demands, actions or causes of action whatsoever, arising out of or any injury, illness loss or damage including death relating to participation in these events. I further state and represent that I am in proper physical condition to participate in this event.

We first note that releases and exculpatory clauses are valid in Tennessee and are not against the public policy of this state. **Dixon v. Manier**, 545 S.W.2d 948, 950 (Tenn. App. 1976). A release is a contract, and rules of construction applied to contracts are used in construing a release. **Richland Country Club, Inc. v. CRC Equities, Inc.**, 832 S.W.2d 554, 557 (Tenn. App. 1991). The cardinal rule is to ascertain the intention of the parties. **Id.** A general release covers all claims between the parties that are in existence and within their contemplation. **Id.** The Court quoted **Jackson v. Miller**, 776 S.W.2d 115 (Tenn. App. 1989), for additional propositions of law:

> In interpreting a release to determine whether a particular claim has been discharged, the primary rule of construction is that the intention of the parties shall govern, and this intention is to be determined with a consideration of what was within the contemplation of the parties when the release was executed, which in turn is to be resolved in the light of all of the surrounding facts and circumstances under which the parties acted. (Citing 66 Am.Jur.2d *Release* § 30 (1973)).
> Claims in tort which have not matured or were not known to the parties when they executed their release and which they did not intend to affect when the settlement was made are not discharged by a release. (Citing 66 Am.Jur.2d *Release* § 33 (1973)).
> A release ordinarily covers all such matters as may fairly be said to have been within the contemplation of the parties when it was given . . . consequently a demand of which a party was ignorant when the release was given is not as a rule . . . embraced therein. . . . (Citing 76 C.J.S. *Release* § 52 (1952)).

**Richland Country Club**, 832 S.W.2d at 557 (quoting **Jackson**, 776 S.W.2d at 118).

Burks first argues that the literal wording of the release did not encompass the appellees because they were not specifically named in the release. The appellees assert that they are covered by the release because Wimbleton Sportsplex was named in the release. Defendant, Kemmons Wilson, Jr., stated in his affidavit that "Wimbleton Sportsplex is a trade name used for Wimbleton Racquet Club, a non-[in]corporated business entity owned by the Defendants, Belz-Wilson Properties, Belz Investment Company, Spence L. Wilson, Robert A. Wilson,

4

Kemmons Wilson, Jr., Carole A. Wilson-West and Dorothy E.W. Moore." The appellees claim that they were released from liability because their trade name appeared in the release.

One may lawfully adopt any trade name in which to conduct his or her business. *Schultz, Baujan & Co. v. Bell*, 130 S.W.2d 149, 151 (Tenn. App. 1939). In *Interstate Fire Ins. Co. v. Kimbrough*, 852 S.W.2d 887 (Tenn. App. 1992), this Court construed a contract between two parties and held that parol evidence was admissible to determine the true identity of the purchaser under the contract. *Id*. at 891 (citing *International House of Talent v. Alabama*, 712 S.W.2d 78 (Tenn. 1986)). One of the parties to the contract was Taylor-Kimbrough Bildors, the trade name for the corporation Taylor and Kimbrough Realty Company. *Id*. at 892-93. The Court used parol evidence to determine that the real party to the contract was the corporation even though the contract was in the name of the trade name. *Id*. at 893. While an entity doing business under a trade name does not have a legal existence and is not capable of being sued, we believe that a business operating as a trade name can validly execute a contract. *See also Carlton v. B & S Used Cars #2*, No. 01A01-9310-CH-00446, 1994 WL 68265, at *2 (Tenn. App. Mar. 9, 1994) (quoting 65 C.J.S. *Names* § 9(1)).

Burks argues that *Hollingsworth v. Provident Life & Accident Ins. Co.*, No. 85-306-II, 1986 WL 5321 (Tenn. App. May 7, 1986), supports his position that the release does not extend to the appellees. In *Hollingsworth*, Harweda Hollingsworth won a worker's compensation case against his employer, Consolidated Aluminum Corporation (CAC), and then signed a release relieving CAC from any further liability resulting from his accident. *Id*. at *1. At the same time, he was pursuing a claim against Provident Life & Accident Insurance Company for long-term disability benefits. *Id*. When Hollingsworth sued Provident for the long-term disability benefits, Provident asserted the release as an affirmative defense, and the trial court held that the release was a complete defense and dismissed the complaint. *Id*. at *2. However, this Court reversed the judgment of the trial court and held that Hollingsworth did not know of any special relationship between CAC and Provident and did not intend to release Provident in the worker's compensation case with CAC. *Id*. at *2-3.

In his affidavit, Burks stated that the defendants were unknown to him when he signed the release. In *Hollingsworth*, the unknown special relationship was between two separate parties, and the Court held that when Hollingsworth released one, he did not intend to release the

5

other. *Id*. at *3. In this case, the unknown party is legally the same party as the one named in the release. Burks also stated in his affidavit that he did not intend to release the appellees. However, the court, in arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written. *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. App. 1992). While Burks may not have known the true legal relationship between the appellees and Wimbleton Sportsplex when he signed the release, we believe that, by releasing Wimbleton Sportsplex, Burks intended to release the true owners of the building, the appellees.

Because parol evidence is admissible to determine the true identity of the parties to the contract, the trial court correctly considered Kemmons Wilson, Jr.'s affidavit and in the absence of countervailing proof, the trial court correctly determined that the appellees were the true parties to the release.

Burks also claims that the release does not apply to the latent defects in the gymnastics pit because the injury occurred outside of a scheduled event. He argues that the literal language of the release relates to the Crye-Leike Olympic events and, since gymnastics was not an event, his injury is not covered. The appellees argue that the language of the release was intended to cover all activities surrounding the Crye-Leike Olympics.

The pertinent language of the release states that the appellees are released "from any and all liability claims, demands, actions or causes of action whatsoever, arising out of or any injury, illness loss or damage including death relating to participation in these events." Burks argues that the contract must be construed strongly against the appellees. In Tennessee, ambiguous language in a contract will be construed most strongly against the author of the language. *Fuller v. Orkin Exterminating Co.*, 545 S.W.2d 103, 107 (Tenn. App. 1975).

We believe that the language "relating to participation in these events" can be considered ambiguous and should be construed against the appellees. Burks was not participating in a scheduled event when he was injured, nor was he preparing for an event by stretching or practicing. He was injured in an activity unrelated to any event in the Crye-Leike Olympics. We interpret the release's intent to be to absolve the appellees from liability for any defect in the premises that occasions injury or damages during a person's participation in the scheduled

6

events. To interpret the release as asserted by the appellees would extend its exculpation to unbounded limits.

Accordingly, the order of the trial court granting summary judgment to the appellees is reversed, and this case is remanded to the trial court. Costs of appeal are assessed against the appellees.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**

7