IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 15, 2022 Session

## CLAUDETTE GILLEY SANFORD v. PHILLIP HOWARD SANFORD

**Appeal from the Circuit Court for Hamilton County**
**No. 20C506      W. Jeffrey Hollingsworth, Judge**

FILED

MAY 2 4 2022

Clerk of the Appellate Courts
Rec'd by_____

**No. E2021-00414-COA-R3-CV**

A former wife sued her former husband for fraudulent misrepresentation and breach of the disclosure warranty in the marital dissolution agreement entered in their divorce fifteen years earlier. Finding that the former wife released those claims through an agreed order entered three years before the underlying action, the trial court granted summary judgment in favor of the former husband. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

William H. Horton, Chattanooga, Tennessee, for the appellant, Claudette Gilley Sanford.

John P. Konvalinka, Chattanooga, Tennessee, for the appellee, Phillip Howard Sanford.

## OPINION

## I.      BACKGROUND

During the discovery phase of the divorce of Claudette Gilley Sanford ("Wife") and Phillip Howard Sanford ("Husband"), Husband's counsel furnished a letter with a balance sheet purporting to summarize all of the parties' assets.[1] Husband and Wife were divorced by order of the court, dated July 1, 2005, with an incorporated marital dissolution agreement ("MDA"). The MDA was drafted by Wife's counsel who also represents her in this action. The MDA allocated all marital assets and was intended to serve as a complete

---

[1] This document was unsworn.

settlement of all property rights and all further rights and obligations of the marriage. The MDA provided that each party made a full and complete disclosure of assets; that the parties warranted the accuracy of the information provided; that consent to the execution of the MDA had not been obtained by duress, fraud or undue influence; and that the execution of the MDA "shall not release any party from any claims the other party may have to assets or liabilities that have not been disclosed."

In 2011, Wife filed a petition for contempt in the original divorce case, alleging that Husband failed to provide an accounting of stock through Port Royal Holdings, Inc. and also refused to provide her with her share of proceeds from other stock options referenced in the MDA. Wife voluntarily dismissed that action.

In 2017, Wife filed another petition for contempt in the original divorce case, raising the same issues contained in the 2011 petition and also alleging that Husband failed to pay for Wife's insurance premiums and uncovered medical expenses pursuant to the terms of the MDA. Following negotiations between counsel, the parties submitted an agreed order setting out their agreement. Accordingly, in December 2017, the trial court[2] ordered that, in exchange for Husband's $100,000 payment to Wife:

> [Wife's 2017 petition for contempt] be dismissed with prejudice as to all claims [Wife] has or could assert against [Husband] pursuant to the [MDA], including but not limited to attorney fee claims and all past, present and future claims with respect to Paragraph 14 of the [MDA] as it relates to the payment of medical expenses.[3]

(Punctuation in original). Wife's counsel, Husband's counsel, and the trial judge signed the court's order, and neither party moved to modify or set it aside.

In 2019, the Social Security Administration informed Wife by letter that Husband had pension or other retirement benefits with the Coca-Cola Company, Coca-Cola Enterprises, and the Krystal Company. It is undisputed that Husband did not disclose these assets prior to the entry of the final decree of divorce and the MDA, although they existed at the time of discovery.

---

[2] The trial judge who entered this December 2017 order is the same trial judge who entered the order now appealed from.

[3] Paragraph 14 of the MDA provided that Husband would pay premiums for Wife's health insurance coverage and medical expenses up to $1,500 for uncovered conditions until she was Medicare-eligible.

On April 30, 2020, Wife filed the complaint underlying this appeal, alleging that Husband failed to disclose personal assets prior to the entry of the MDA and that she is entitled to an accounting of such assets and a judgment based upon constructive fraud or equitable reformation. Wife's April 30 complaint was filed as its own action, not within the original divorce action. On June 17, 2020, Wife filed a petition to modify and for enforcement in the original divorce action pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure.[4] The trial court dismissed Wife's petition to modify, determining "that the allegations of fraud governed by [Rule] 60.02 must be alleged within one year of the Order."

Husband moved to dismiss the April 30 complaint under the prior suit pending doctrine, citing Wife's pending petition in the divorce action. Wife then filed a motion to transfer the complaint to the divorce action with the then-pending petition. The court granted the motion and transferred the complaint but reserved ruling on Wife's motion to consolidate.[5]

On July 6, 2020, Wife filed the operative amended complaint for fraudulent misrepresentation and breach of the disclosure warranty in the MDA. In the amended complaint, Wife alleged that Husband's benefits with the Coca-Cola Company, Coca-Cola Enterprises, and the Krystal Company were not disclosed to her and were not discoverable by her. Wife also alleged that she reasonably relied on the information furnished by Husband, including the balance sheet, when executing the MDA. She further alleged that Husband "fraudulently induced [her] to enter into the MDA by knowingly misrepresenting that he had provided a full disclosure of assets and by concealing assets," and that he "knew or should have known that [Wife] would not have entered into the MDA had [she] known of the omissions and misrepresentations regarding material facts." Wife's amended complaint requested an accounting, a money judgment for damages, prejudgment interest, and attorney fees. The trial court denied Husband's motion to dismiss the complaint, prompting Husband to file his answer to the amended complaint.

On January 4, 2021, Husband moved for summary judgment arguing that Wife's amended complaint "is barred by the doctrines of collateral estoppel, accord and satisfaction, and the statute of limitations." Husband also filed a statement of the material facts as to which he contended there was no genuine issue for trial. In response, Wife filed

---

[4] "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order or proceeding for . . . (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party. . . . The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken." Tenn. R. Civ. P. 60.02.

[5] The court later denied the motion to consolidate as moot.

an affidavit and argued that her action was one of common law fraud and breach of contract. She stated that when the agreed order was entered in December 2017, she had no knowledge of Husband's failure to disclose retirement benefits and that she did not intend to "release any claims of which she had no knowledge at such time." Wife contended that "[h]er intent was to release all claims she could have had at the time of the release, or in the future, as to the stock issues and the medical premiums and medical expenses."

By order entered March 24, 2021, the trial court found:

> When Wife was notified of the existence of the pensions, she filed a motion in the divorce case for relief from the judgment entered in 2017. Her motion was filed pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. That motion was dismissed because it was filed more than one (1) year after entry of the 2017 order.
>
> She also filed this action, which is an independent action allowed by Rule 60.02. An independent action such as this case must have evidence of extrinsic fraud.
>
> . . .
>
> In this case, the Wife accuses the Husband of intrinsic fraud in that he falsely claimed that he had disclosed all assets in regard to the MDA which was submitted to the Court in the divorce case. There is no allegation or proof of extrinsic fraud, which is required to support this independent action.

The trial court further found that Husband presented sufficient evidence to establish accord and satisfaction based on the release signed by the parties. The trial court reasoned that the language in the 2017 agreed order "forecloses any other claims the Wife may have against the Husband related to the MDA. She released those claims in exchange for $100,000.00. That is accord and satisfaction." Accordingly, the trial court granted summary judgment and dismissed all of Wife's claims with prejudice. Wife appealed.

## II.     ISSUE

We restate the issue on appeal as follows: Whether the trial court erred in entering summary judgment in Husband's favor.

## III.     STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must either submit evidence "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting Tenn. R. Civ. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." Tenn. R. Civ. P. 56.06. "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, "[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye*, 477 S.W.3d at 250. Therefore, "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* In reviewing a summary judgment motion on appeal, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Shaw v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 S.W.3d 726, 733 (Tenn. Ct. App. 2019) (citations and quotations omitted).

## IV. DISCUSSION

One of the issues before the trial court was the breadth of the release contained in the December 2017 agreed order. This issue is dispositive to the appeal. On appeal, Wife

argues that the trial court "erred in finding that the 2017 agreed order that was entered on separate claims under the MDA, before [she] was aware of her present claims, operated as a release of all known and unknown claims." In response, Husband asserts that the language "all claims [Wife] *has or could assert* against [Husband] pursuant to the [MDA], *including but not limited to* attorney fee claims and all past, present and future claims with respect to Paragraph 14 of the [MDA] as it relates to the payment of medical expenses" means that Wife agreed to release "all claims to [his] assets" and further evinces her intent to release him from "all obligations" under the MDA.

Our Supreme Court has stated that courts favor agreed orders because they indicate an amicable result to an issue in litigation. *Lovlace v. Copley*, 418 S.W.3d 1, 29–30 (Tenn. 2013). Agreed orders have been described as "about the most binding of agreements that can be made." *Id.* (quotations omitted). A release has been defined as "[l]iberation from an obligation, duty, or demand; the act of giving up a right or claim to the person against whom it could have been enforced." *Black's Law Dictionary* (11th ed. 2019). "[R]eleases . . . are valid in Tennessee and are not against the public policy of this state." *Burks v. Belz-Wilson Props.*, 958 S.W.2d 773, 776 (Tenn. Ct. App. 1997). A release is a contract; therefore, the rules of construction applicable to contracts apply in construing the terms of a release. *Richland Country Club, Inc. v. CRC Equities, Inc., RCC*, 832 S.W.2d 554, 557 (Tenn. Ct. App. 1991). "Generally speaking, the scope and extent of release depends on the intent of the parties as expressed in the instrument." *Peatross v. Shelby Cnty.*, No. W2008-02385-COA-R3-CV, 2009 WL 2922797, at *2 (Tenn. Ct. App. Sept. 10, 2009). To determine the scope of a release, we look to:

> the intention of the parties as expressed in the terms of the particular instrument, considered in the light of all the facts and circumstances. The intention of the parties is to be gathered from the entire instrument and in such inquiry that construction will be adopted which gives effect to each and every part of the instrument where that is possible. In interpreting a release to determine whether a particular claim has been discharged, the primary rule of construction is that the intention of the parties shall govern and this intention is to be determined with a consideration of what was within the contemplation of the parties when the release was executed, which in turn is to be resolved in the light of all of the surrounding facts and circumstances under which the parties acted.

*Evans v. Tillett Bros. Constr. Co.*, 545 S.W.2d 8, 11 (Tenn. Ct. App. 1976).

*Peatross v. Shelby County* is instructive to the present appeal. In *Peatross*, this court "first considered the language of the [r]elease itself," and second examined "the facts and circumstances surrounding the execution of the [r]elease." *Peatross*, 2009 WL 2922797,

-6-

at *4. In so doing, we considered affidavits offered by the plaintiff in that case to determine the parties' intent and whether "a trier of fact could draw different inferences about their intent." *Id.*

In considering the language of a release:

> We give those words their usual, natural and ordinary meaning. Contracts are to be judged by an *objective* standard, i.e., what a reasonable onlooker would conclude the parties intended from the words expressed in the instrument. Therefore, in the absence of an ambiguously worded release, we are not interested in what the parties subsequently say they meant; we are only interested in what the words, given their natural and ordinary meaning, tell us the parties intended.

*First Tennessee Bank Nat. Ass'n v. C.T. Resorts Co.*, No. 03A019503-CH-00102, 1995 WL 511884, at *7 (Tenn. Ct. App. Aug. 30, 1995) (internal citations and quotations omitted). Here, the release language contained in the agreed order is broad and encompasses "all claims" which Wife "could assert against [Husband] pursuant to the [MDA]." The words "could" and "including but not limited to" plainly refer to the possibility of future claims stemming from the MDA, not exclusively the claims Wife *did* assert in the 2017 petition for contempt. In consideration, Husband paid Wife $100,000.00. This unambiguous language reveals the parties' intent that the release operate to broadly cover all claims, including future claims, related to the MDA. The language of the release supports Husband's contention and the trial court's conclusion that Wife's claims against him in the instant action have been released.

Next, we turn to the facts and circumstances surrounding the execution of the release. In her affidavit filed over three years after signing the agreed order, Wife simply asserts that her "intent was to release all claims [she] could have had at the time of the release, or in the future, as to the stock issues and the medical premiums and medical expenses." Wife also points to the correspondence between the parties' counsel during the negotiations preceding the agreed order to buttress her stated intent. As far as the record shows, an email dated November 15, 2017, was the last communication between the parties' counsel on the negotiations underlying the agreed order. Husband's counsel wrote to Wife's counsel:

> [Husband] will deposit $100,000 in our trust account and after that is done I will send you a $100,000 check. This will represent the payment of *all* past *and future* obligations that [Husband] has to [Wife]. . . . I assume you will prepare the appropriate pleading to *finally put this matter to rest*. If you will

send me a draft we can have it ready to file as soon as the funds are transferred to [Wife].

(Emphasis added). The evidence put forth by Wife does not create a genuine issue of material fact as to what was within the contemplation of the parties at the time of the release, i.e., its scope. The email contains no language limiting Wife's release of claims to stock issues, medical premiums, and medical expenses as she presses in her affidavit. Rather, the email states that the $100,000.00 payment will be in consideration of "all past and future obligations that [Husband] has to [Wife]." Besides the attorneys' correspondence and her subjective impression of her own intent when signing the agreed order containing the release, Wife has not identified any "independent facts or circumstances" from which a trier of fact could conclude that the parties intended to release only claims existing at the time of the release, or future claims relating only to stock issues, medical premiums, and medical expenses. *See Peatross*, 2009 WL 2922797, at *4; *see also* Tenn. R. Civ. P. 56.06; *Rye*, 477 S.W.3d at 265.

With the foregoing considerations in mind, and drawing all reasonable inferences in Wife's favor, we conclude that the parties intended to release Husband from future claims pursuant to the MDA. This lawsuit falls within the scope of the release contained in the December 2017 agreed order. Accordingly, we conclude that the trial court did not err in finding that Wife released the claims underlying this action in exchange for $100,000.00 and in granting summary judgment in Husband's favor on this basis. We express no opinion as to the other portions of the trial court's order. In light of our holdings above, any remaining issues are pretermitted.

## V.     CONCLUSION

We affirm the trial court's judgment. The case is remanded for such further proceedings as are necessary and consistent with this opinion. Costs of the appeal are taxed to the appellant, Claudette Gilley Sanford.

JOHN W. McCLARTY, JUDGE

- 8 -