INTERESTED UNDERWRITERS AT LLOYDS, as Assignee of FUR GALLERIA, INC., Appellant, v DUCOR'S, INC., et al., Respondents.

First Department, July 26, 1984

### APPEARANCES OF COUNSEL

*Paul Kovner* of counsel (*Paul M. Ginsberg* with him on the brief; *Ginsberg & Caesar, P. C.,* attorneys), for appellant.

*Joanne Venino* of counsel (*James J. Taylor* with her on the brief; *Bigham Englar Jones & Houston,* attorneys), for respondents.

### OPINION OF THE COURT

SULLIVAN, J.

On March 17, 1982, Fur Galleria, Inc., a commercial tenant of a portion of the premises at 434 Central Avenue, Cedarhurst, New York, owned by defendant, Meyer Ducorsky, sustained a $218,000.14 loss as the result of a fire which originated in the vacant adjoining premises at 432 Central Avenue, also owned by defendant. The tenant was compensated in full for its loss by plaintiff, its fire insurer, to which it assigned all its right, title and interest in any claim it might have against defendant for such loss. Plaintiff thereafter commenced this action for the recovery of $218,000.14, alleging that defendant's negligence in the

ownership, operation, maintenance and control of the adjoining premises was the sole cause of the fire.

Defendant moved to dismiss the complaint on the ground that the action was barred by a waiver of subrogation clause contained in paragraph 9 of the lease agreement executed by defendant and the tenant's assignor on September 27, 1972. In pertinent part paragraph 9 provides: "Nothing contained hereinabove shall relieve Tenant from liability that may exist as a result of damage from fire or other casualty. Notwithstanding the foregoing, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Landlord and Tenant each hereby releases and waives all right of recovery against the other or anyone claiming through or under each of them by way of subrogation or otherwise." Special Term granted the motion, holding that the foregoing clause constituted a waiver of subrogation which barred the action. We disagree.

At the outset we note that, absent any indication of overreaching or conscionability, a waiver of subrogation rights provision "violate[s] neither section 5-323 of the General Obligations Law nor any other public policy" of this State. (*Board of Educ. v Valden Assoc.*, 46 NY2d 653, 657; see *Brentano's, Inc. v Charter Mgt. Corp.*, 46 AD2d 861.) Such clauses are viewed as a device by which the parties merely allocate the risk of liability between themselves to third parties through insurance. Here, however, the dereliction of duty with which defendant is charged is completely extraneous to any duty or obligation encompassed by the parties' agreement and the relationship created thereunder.

We have been unable to discern, nor has either party offered, any New York cases interpreting a lease provision similar to the clause at issue in instances where, as here, the loss claimed arises out of an act wholly outside the scope of the landlord and tenant relationship. Faced with the same issue, New Jersey courts have held that the clause does not encompass conduct unrelated to the land-

lord and tenant relationship. (*W. F. Zimmerman, Inc. v Daggett & Ramsdell,* 34 NJ Super 81; cf. *Mayfair Fabrics v Henley,* 48 NJ 483.) While, clearly, it was the intent of the parties to the lease in question to allocate to their respective insurers the risk of liability for breach of any duty or obligation related to the landlord and tenant relationship, we are not persuaded that they expressed a similar intent with respect to liability unrelated to that relationship.

A lease should be construed in the light of the legal relationship which the parties, by entering into such an agreement, mutually assume, namely, that of landlord and tenant (*Redding v Gulf Oil Corp.,* 38 AD2d 850), and it is in the context of this limited relationship that a lease's provisions must be read. Throughout the lease and, more particularly, paragraph 9, the parties are referred to exclusively as landlord and tenant. The references to their respective rights, duties and obligations clearly limit the risks to be allocated between them to those which arise out of the landlord's ownership and the tenant's use and occupancy of the demised premises. In fact, the lease explicitly provides that the landlord's duties and obligations terminate upon the sale of the premises. In such circumstances, the new owner would be entitled to the benefit of the waiver of subrogation clause and the former landlord, though a party to the original agreement, could not claim its benefit if a fire, negligently caused, emanated from his adjoining premises and damaged the demised premises, causing the tenant to sustain a loss. We see no reason why he should be in any better position because he is the coincidental owner of the damaged premises. In construing an agreement "the entire contract must be considered and, as between possible interpretations of an ambiguous term, that will be chosen which best accords with the sense of the remainder of the contract." (*Rentways, Inc. v O'Neill Milk & Cream Co.,* 308 NY 342, 347.) Thus, it seems to us that in executing a form lease agreement (the Real Estate Board of New York Inc.'s standard form of store lease) of which paragraph 9 was an integral part, the natural intendment of the parties was to waive their subrogation rights against each other for risks arising out of the relationship to which they were committing themselves, viz., landlord and tenant, and no other.

Furthermore, the parties would not have had any need or reason for allocating any other risk. Certainly the record does not reveal any such consideration. Nor can it be inferred from the surrounding circumstances (see *Fleischman v Furgueson*, 223 NY 235) that the parties intended to allocate all risks between them to their insurers, including, as here, the risk of loss from any act wholly unrelated to the landlord and tenant relationship and committed by a third party who happens to be the landlord. By defendant's interpretation the waiver clause would apply even if, for example, he was in the construction business and caused the tenant to suffer damages at the demised premises as a result of his use of dynamite in blasting at a construction site some distance away. No practical or economic reason for such a strained interpretation is suggested. Moreover, by denying a casualty insurer a right of recourse against the wrongdoer in such a situation the entire loss, to the extent it is covered by insurance, is foisted upon the insurer. Inevitably, such an inequitable method of spreading the risk has to have an adverse impact upon the cost of purchasing such insurance.

Finally, we are fortified in our view that the clause at issue does not extend to conduct unrelated to the landlord and tenant relationship by reference to one of the cardinal rules of contract construction. "[W]here there is ambiguity in the terms of a contract prepared by one of the parties, 'it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against' such party." (*Rentways, Inc. v O'Neill Milk & Cream Co.*, 308 NY, at p 348, citing *Mutual Ins. Co. v Hurni Co.*, 263 US 167, 174.) This rule has been applied even where the language in question appears in a form used, but not originally drafted, by one of the parties to the contract. (See *A & Z Appliances v Electric Burglar Alarm Co.*, 90 AD2d 802.) In this case defendant's use of a form lease qualifies it as the drafter of the contract, since it had the opportunity in the first instance to eliminate any ambiguity. Thus, any uncertainty as to the meaning of the waiver clause should be resolved in the tenant's favor.

Accordingly, the judgment of the Supreme Court, New York County (Dontzin, J.), entered January 3, 1984, grant-

ing defendant's motion pursuant to CPLR 3211 to dismiss the complaint, should be reversed, on the law, with costs and disbursements, and the motion denied.

SILVERMAN, J. (dissenting). We would affirm the judgment appealed from.

Waiver of subrogation rights by the insured is valid, at least if nothing in the insurance policy forbids it. (See *Brentano's, Inc. v Charter Mgt. Corp.*, 46 AD2d 861; *Board of Educ. v Valden Assoc.*, 46 NY2d 653.)

The waiver of the subrogation clause here involved is not expressly limited to fire or other casualty originating in the same building, nor does it expressly exclude fire or casualty originating in adjacent property. Nor do we see that such exclusion would be consistent with the reasonable expectations of the parties, or the business sense of their arrangements.

As a business arrangement, the parties agreed that each of them would get its own insurance for damage to its property, and that each would "look first" to its own insurance to recover for such damage, and if the insurance did make it whole, it would not sue the other party "by way of subrogation or otherwise".

There is no reason why the parties should have limited this protection against subrogation suits to casualties originating in the same building. What the parties wanted was protection against subrogation suits where the insurance covered the loss, and there was no reason why they should not want that protection because the calamity originated elsewhere. The parties should not be deprived of the protection and repose they wanted by subtle legal interpretation to narrow that antisubrogation protection that each was contracting for; or to extend the insurance company's subrogation effort to shift to someone else the loss the insurance company had contracted to take care of.

Even in conceptual legal terms, it is difficult for us to see why subrogation should be permitted here. The tenant leases only the space he leases. The rest of the landlord's property is the landlord's. What possible difference can it make to the tenant how extensive the property owned by the landlord is that is not leased to the tenant? It cannot

matter to the tenant whether the landlord owns the whole building, or the whole block, or is only himself a lessee of a portion of the building. Suppose, for example, a landlord owns a piece of property on part of which a building stands and part of which is "vacant — no building occupies every square inch of the lot or lots on which it stands — would the antisubrogation clause not apply because the fire originated in the "vacant" area and not in the building structure? Surely, it cannot matter that the area on which the building stands is held by the landlord under one deed and the "vacant" area under another, or that a lot line runs through the landlord's property, with the tenant leasing a portion of the space on one side of the lot line and the fire originating somewhere on the other side.

The foregoing analysis is not affected by the fact that the antisubrogation clause refers to the parties as "LANDLORD" and "TENANT". That is merely a common drafting device, particularly in form of contracts, to avoid having to repeat at each point the names of the parties. And in a lease agreement, it is easier to say "LANDLORD" and "TENANT" than "party of the first part" or "party of the second part". But the lease agreement makes clear at its very beginning who is meant by "LANDLORD". It says "MEYER DUCORSKY, residing at 42 Columbia Avenue, Cedarhurst, New York, party of the first part, hereinafter referred to as LANDLORD". It does not say "MEYER DUCORSKY, in his capacity as Landlord." So "LANDLORD" means "MEYER DUCORSKY, residing at [etc.]". And it is Meyer Ducorsky residing at etc., who claims the protection that the antisubrogation clause extends to him, "LANDLORD".

CARRO and MILONAS, JJ., concur with SULLIVAN, J.; SANDLER, J. P., and SILVERMAN, J., dissent in an opinion by SILVERMAN, J.

Judgment, Supreme Court, New York County, entered on January 3, 1984, reversed, on the law, the judgment vacated, and the motion pursuant to CPLR 3211 to dismiss the complaint denied. Appellant shall recover of respondents $75 costs and disbursements of this appeal.