# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

## PLANTERS GIN COMPANY v. FEDERAL COMPRESS & WAREHOUSE COMPANY, INC., ET AL.

### Rule 3 Appeal from the Circuit Court for Shelby County
### No. 88907-5 T.D.    The Honorable Kay S. Robilio, Judge

---

### No. W1999-02460-COA-R3-CV- Decided July 12, 2000

---

This case involves a commercial lease agreement which contained an exculpatory clause and a waiver of subrogation clause. The lessee suffered damage to goods stored in its warehouse when the roof of an adjacent warehouse owned by the lessor collapsed, leaking rainwater into the lessee's warehouse. The lessee sued the lessor and its alarm service provider for failing to notify the fire department about the water leak or taking other appropriate action. The trial court granted summary judgment in favor of the lessor and the alarm company. The lessee appeals. We affirm in part, reverse in part, and remand, finding that the exculpatory clause and the waiver of subrogation clause in the lease are inapplicable to claims arising from acts unrelated to the landlord-tenant relationship, and that the alarm company had no affirmative duty to protect or warn the lessee.

**Tenn.R.Civ.P. 3; Appeal as of Right; Judgment of the Circuit Court is Affirmed in part, Reversed in part, and Remanded**.

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Allan B. Thorp, Memphis, Tennessee, for the appellant, Planters Gin Company

Michael B. Neal, Elizabeth J. Landrigan, Memphis, Tennessee, for the appellee, Federal Compress & Warehouse Company, Inc.

John Barry Burgess, Memphis, Tennessee, for the appellee, Wells Fargo Alarm Services, Inc.

### OPINION

Defendant/Appellee Federal Compress & Warehouse Company, Inc. ("Federal Compress") leased warehouse space for the storage of cotton to Plaintiff/Appellant Planters Gin Company ("Planters Gin"). The lease defined the premises leased by Planters Gin, referred to as Building One and Building Two, as "61,188 Total Square Feet consisting of 37,500 Square Feet in Building No. 1 and 23,688 Square Feet in Building No. 2." The lease was drafted by Federal Compress. Federal Compress also owned a third, vacant building, Building Three, which was adjacent to Buildings One

and Two and not subject to the lease. Buildings One and Two were separated from each other and from Building Three by brick firewalls, and each building had its own roof. All three buildings were equipped with a sprinkler system which was monitored by Defendant/Appellee Wells Fargo Alarm Services, Inc. ("Wells Fargo") pursuant to a service agreement between Federal Compress and Wells Fargo.

The lease between Planters Gin and Federal Compress contained the following paragraph, entitled "Upkeep of Premises":

> Lessee will at Lessee's sole expense keep and maintain in good repair the entire leased premises including interior walls, floors, ceilings, ducts, utilities, air conditioning, heating and lighting and plumbing and also including the loading dock and any parking area exclusively used by Lessee. Lessor shall maintain the sprinkler system, roof, foundations, and outside walls (not including doors and floors); however, Lessor shall not be obliged to make any repair unless it shall be notified in writing by Lessee of the need of such repair . . . .

On the evening of October 27, 1996, a rainstorm caused a portion of the roof of Building Three to collapse. The roof collapsed onto the sprinkler system pipes in Building Three, causing the pipes to burst. Rainwater from the open roof as well as water from the burst sprinkler system pipes flowed throughout the night into Building Three and eventually into Building Two, causing damage to Planter Gin's cotton stored in Building Two. Although Wells Fargo's monitoring station received trouble signals throughout the evening, it failed to notify the fire department, Federal Compress, or anyone else of the trouble at the warehouses. Federal Compress employees discovered the water leak at 6:00 a.m. the next morning when they arrived for work.

The lease between Planters Gin and Federal Compress contained an exculpatory clause requiring Planters Gin to hold harmless and indemnify Federal Compress from liability for any loss sustained by Planters Gin. The lease also required Planters Gin to obtain public liability insurance naming Federal Compress as an insured party and insurance covering the contents of Buildings One and Two with a waiver of subrogation clause in favor of Federal Compress. Paragraph 25 of the lease, entitled "Damages and Accidents," stated:

> Lessee agrees to hold harmless and indemnify Lessor from and against any liability or loss . . . arising out of any cause associated with Lessee's business or use of the premises. In addition, Lessee agrees to provide public liability insurance naming Lessor as additional insured to protect Lessor from risks customarily covered by such insurance . . . . Lessee also shall carry contents coverage on its contents with a waiver of subrogation clause as to Lessor.

Pursuant to the lease, Planters Gin purchased a marine open cotton insurance policy from Cotton Fire & Marine Underwriters which insured the cotton stored in Buildings One and Two. However, the insurance policy did not contain a waiver of subrogation clause as required by the lease.

-2-

The alarm service contract between Federal Compress and Wells Fargo contained a provision limiting the duties and the liability of Wells Fargo. The contract stated:

> It is understood and agreed by [Federal Compress] that Wells Fargo Alarm is not an insurer; that the sums payable hereunder to Wells Fargo Alarm by [Federal Compress] are based upon the value of services offered and the scope of liability undertaken and such sums are not related to the value of property belonging to [Federal Compress] or to others located on [Federal Compress's] premises . . . . [Federal Compress] agrees that Wells Fargo Alarm shall not be liable for any of [Federal Compress's] losses or damages, irrespective of origin, to person or to property, whether directly or indirectly caused by agreement or by negligent acts or omissions of Wells Fargo Alarm, its agents or employees.

An insurance adjuster retained by Cotton Fire & Marine, Robert Prinz ("Prinz"), stated that Paragraph 25 of the lease conflicted with the marine open cotton insurance policy, such that "there may not have been any insurance coverage for the loss of October 27, 1996." Prinz stated that, in accordance with the insurance policy, Cotton Fire & Marine agreed to reimburse Planters Gin for its loss by "loan receipt" in the amount of $220,550.48 on the condition that Planters Gin file suit "against the party who it is believed owes for the loss, with the insurer to bear the expense of the litigation."

On July 11, 1997, Planters Gin filed a lawsuit against Federal Compress and Wells Fargo. In the lawsuit, Planters Gin alleged that:

> [a]s a direct and proximate result of the roof collapse, the burst water pipes, and the failure of Wells Fargo to notify the fire department, to notify appropriate persons at Federal Compress, or to take other appropriate action, large quantities of water continued to flow into [Building Three,] such that water then flowed from [Building Three] into [Building Two] where the water did substantial damage to Planter's cotton.

Planters Gin claimed that Federal Compress and Wells Fargo failed to exercise reasonable care in discovering that the roof over Building Three had collapsed and that large amounts of water were flowing from Building Three into Building Two. It sought damages of $250,000 caused as a result of the water leak.

Federal Compress filed a motion for summary judgment, arguing that Paragraph 25 of its lease with Planters Gin allocated the risk of loss or damage to the cotton stored in Building Two to Planters Gin. Federal Compress asserted that, in light of the clause, Planters Gin could not recover against Federal Compress for any loss or damage. Wells Fargo also filed a motion for summary judgment, arguing that the provisions in Wells Fargo's alarm service contract with Federal Compress relieved it of any liability for loss or damage suffered by Planters Gin. The trial court entered orders granting summary judgment in favor of both Federal Compress and Wells Fargo. From these orders, Planters Gin now appeals.

As to Federal Compress, Planters Gin contends on appeal that Paragraph 25 of its lease does not apply under these circumstances because the claim against Federal Compress arises out of the landowner's negligence regarding property adjacent to the leased property, not negligence of the landlord regarding the leased property. Planters Gin also contends that the provisions contained in Paragraph 25 do not relieve Federal Compress of liability for its own negligence because they do not specify that Federal Compress is to be indemnified against liability arising out of its own negligence. Federal Compress argues on appeal that Planters Gin's lawsuit against it violated Paragraph 25 of the lease because it is in effect a subrogation claim, since Planters Gin was paid by its insurer in the form of a "loan receipt," a loan without interest to be repaid only out of the proceeds of any recovery against Federal Compress.

As to Wells Fargo, Planters Gin argues on appeal that the trial court erred in dismissing its action against Well Fargo because Wells Fargo had a duty to Planters Gin despite the absence of a contractual relationship between the Planters Gin and Wells Fargo. Planters Gin contends that the alarm service contract between Wells Fargo and Federal Compress does not relieve Wells Fargo of liability to Planters Gin.

Planters Gin first argues that the trial court erred in granting summary judgment in favor of Federal Compress. Planters Gin asserts that the subject of the lease was Buildings One and Two and that Paragraph 25 should not release Federal Compress from liability for negligence occurring on property not subject to the lease. Planters Gin argues that the negligent conduct alleged in this case, the failure to maintain the roof over Building Three and to monitor the sprinkler system, was committed by Federal Compress in its capacity as an adjacent landowner and not as the lessor of the property which was subject to the lease. Planters Gin asserts that Paragraph 25 was not intended to apply to acts committed as an adjacent landowner. It notes that a contract is to be construed against its author, in this case, Federal Compress.

Federal Compress argues that Paragraph 25 was intended to place all risk of loss upon Planters Gin and to relieve Federal Compress from responsibility for any and all losses to the contents stored in Planters Gin's lease space, however caused. Federal Compress also argues that maintaining the roof over Building Three and the sprinkler system are "natural activities" for a landlord and precisely the types of risks Paragraph 25 was designed to allocate to Planters Gin.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn.R.Civ.P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that

there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis omitted).

Summary judgment is appropriate only when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

The cardinal rule in interpreting written instruments is to ascertain the intention of the parties and to give effect to that intention consistent with legal principles. *See Burks v. Belz-Wilson Properties*, 958 S.W.2d 773, 776 (Tenn. Ct. App. 1997). When clear contract language reveals the intent of the parties, there is no need to apply rules of construction. *See Warren v. Metro. Gov't of Nashville and Davidson County*, 955 S.W.2d 618, 623 (Tenn. Ct. App. 1997). A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one; a strained construction may not be placed on the language used to find an ambiguity where none exists. *See Empress Health and Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 190-91 (Tenn. 1973). We are to consider the agreement as a whole in determining whether the meaning of the contract is clear or ambiguous. *See Gredig v. Tennessee Farmers Mut. Ins. Co.,* 891 S.W.2d 909, 912 (Tenn. Ct. App.1994). Ambiguous language is construed most strongly against the author of the language. *See Burks,* 958 S.W.2d at 777 (citing *Fuller v. Orkin Exterminating Co.*, 545 S.W.2d 103, 107 (Tenn. Ct. App. 1975)); *see also Chazen v. Trailmobile, Inc.*, 384 S.W.2d 1, 4 (Tenn. 1964) (stating that a lease is to be construed most strongly against the drafter of the instrument).

In *Interested Underwriters at Lloyd's v. Ducors, Inc.*, 478 N.Y.S.2d 285 (App. Div. 1984) (Silverman, J., dissenting) *aff'd* 491 N.Y.S.2d 620, 481 N.E.2d 252 (N.Y. 1985), the landlord and tenant entered into a commercial lease agreement containing an exculpatory clause requiring a waiver of subrogation. *Id.* at 286. The clause provided:

> [n]othing contained hereinabove shall relieve Tenant from liability from fire or other casualty. Notwithstanding the foregoing, each party shall look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Landlord and Tenant each hereby releases and waives all right of recovery against the other or anyone claiming through or under each of them by way of subrogation or otherwise.

*Id.* at 286. The premises leased by the tenant were adjacent to vacant premises owned by the landlord. *See id.* at 286. A fire occurred on the landlord's vacant property causing damage to the premises leased by the tenant. The tenant's insurer reimbursed the tenant for its losses but then sued

the landlord through its right of subrogation to recover the amount paid to the tenant. *See id.* at 286. The landlord argued that the waiver of subrogation clause contained in the lease barred recovery by the tenant against the landlord for any damages or losses. *See id.* at 286.

The court in *Ducor's* held that the lease agreement should be construed in light of the limited legal relationship into which the parties had entered by executing the lease agreement, namely, that of landlord and tenant. *Id.* at 287. The court noted that, throughout the lease, the parties were referred to exclusively as "landlord" and "tenant." *Id.* at 287. It also found that the parties' respective rights and duties under the lease limited the risks allocated between them to those arising out of the landlord's ownership and the tenant's use of the lease premises. It found no evidence that the parties intended to allocate all possible risks of loss between them to insurers, and particularly not risks arising from acts "wholly unrelated to the landlord and tenant relationship and committed by a third-party who happens to be the landlord."[1] *Id.* at 287. Consequently, the court held that the parties intended only "to waive their subrogation rights against each other for risks arising out of the relationship to which they were committing themselves, *viz.,* landlord and tenant, and no other." *Id.*; *see also Millican of Washington, Inc. v. Wienker Carpet Service, Inc.*, 722 P.2d 861, 862-863 (Wash. Ct. App. 1986) (holding that waiver of subrogation in commercial lease applied only to damages or losses to property subject to the lease).

In this case, the legal relationship into which Planters Gin and Federal Compress entered by executing the lease agreement was that of "lessor" and "lessee." The lease defined the lease premises as Building One and Building Two. Throughout the lease, and in Paragraph 25 in particular, Federal Compress and Planters Gin are referred to almost exclusively as "lessor" and "lessee." The lease does not refer to the parties' rights and duties with respect to property not subject to the lease. Ambiguities in a contract are to be construed against the party who drafted it, in this case, Federal Compress. *See Burks*, 958 S.W.2d at 777; *see also Ducor's*, 478 N.Y.S.2d at 277-278, *and Millican*, 722 P.2d at 866. The lease agreement must be construed in light of the legal relationship into which the parties entered by executing the lease. *See Ducors*, 478 N.Y.S.2d at 287. Consequently, we find that the parties intended that Paragraph 25 of the lease, the exculpatory clause and the requirement of a waiver of subrogation rights, pertain only to risks arising out of the lessor-lessee relationship. Accordingly, the grant of summary judgment to Federal Compress must be reversed.

Our holding as to Paragraph 25 of the lease pretermits Planters Gin's argument that the exculpatory clause in Paragraph 25 does not release Federal Compress from its own liability, as well as Federal Compress' argument that the lawsuit by Planters Gin is in effect a subrogation claim which violates Paragraph 25, despite the "loan receipt" arrangement between Planters Gin and its insurer.

---

[1]The *Ducors* court observed that, under the landlord's broad interpretation of the waiver of subrogation clause, recovery by the tenant against the landlord would be barred even if, for example, the landlord was in the construction business and caused the tenant to suffer damages at the lease premises as a result of his use of dynamite in blasting at a construction site miles away. *Id.* at 287.

Planters Gin also argues on appeal that the trial court erred in granting summary judgment in favor of Wells Fargo. Planters Gin asserts that Wells Fargo owed a common law tort duty to Planters Gin, apart from any contractual obligation, to warn or to take other action once it had notice of trouble at Planters Gin's warehouse, noting that the burden on Wells Fargo was slight and the risk of harm to Planters Gin was foreseeable. Planters Gin argues that failure of Wells Fargo to do so was negligence. Wells Fargo argues that it owed no duty to Planters Gin to act on its behalf.

To establish negligence, the plaintiff must prove each of the following elements: (1) a duty of care owed by the defendant to the plaintiff, (2) conduct by the defendant falling below the applicable standard of care amounting to a breach of that duty, (3) an injury or loss, (4) causation in fact, and (5) proximate, or legal, cause. *See McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

The existence of a duty of care owed by the defendant to the plaintiff is a question of law for the court which requires consideration of whether "the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." *Bradshaw v. Daniel*, 854 S.W.2d 865, 870 (Tenn. 1993) (quoting W. Page Keeton *et al.*, Prosser and Keeton on the Law of Torts § 37 at 236 (5th ed. 1984)).

Duty of care is "the legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for protection against unreasonable risks of harm." *McClung v. Delta Square Ltd. Partnership*, 937 S.W.2d 891, 894 (Tenn. 1996); *see also McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). The "imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct." *McClung*, 937 S.W.2d at 894-895. "Indeed, it has been stated that 'duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.' " *Id.* (quoting W. Page Keeton *et al.*, Prosser and Keeton on the Law of Torts § 53 at 358 (5th ed. 1984)).

Although all persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others, as a general rule, one person owes no affirmative duty to protect or warn others endangered by the conduct of a third party. *See Bradshaw*, 854 S.W.2d at 870; *Newton v. Tinsley*, 970 S.W.2d 490, 492 (Tenn. Ct. App. 1997). In explaining the reluctance to find nonfeasance a basis of liability, the Tennessee Supreme Court has stated:

> In determining the existence of a duty, courts have distinguished between action and inaction. Professor Prosser has commented that "the reason for the distinction may be said to lie in the fact that by 'misfeasance' the defendant has created a new risk of harm to the plaintiff, while by 'nonfeasance' he has at least made his situation no worse, and has merely failed to benefit him by interfering in his affairs."

*Bradshaw*, 854 S.W.2d at 870 (quoting Prosser and Keeton § 56, at 373 (5th ed. 1984)).

In this case, Wells Fargo agreed in its alarm services contract with Federal Compress to monitor the premises subject to Federal Compress' lease with Planters Gin. Planters Gin claims that Wells Fargo owes a common law tort duty to Planters Gin to warn or to take other action once it had notice of trouble at Planters Gin's warehouse.[2] However, under the circumstances of this case, we must hold that Wells Fargo has no affirmative common law duty to act, to protect or warn Planters Gin. *See Bradshaw*, 854 S.W.2d at 870. Accordingly, we affirm the trial court's grant of summary judgment in favor of Wells Fargo.

In summary, we find that Paragraph 25 of the lease between Planters Gin and Federal Compress is inapplicable to actions not arising out of the lessor-lessee relationship. Consequently, the trial court's grant of summary judgment to Federal Compress is reversed and the cause remanded for further proceedings consistent with this Opinion. We find that Wells Fargo had no affirmative common law duty to act to protect or warn Planters Gin. Therefore, the trial court's grant of summary judgment to Wells Fargo is affirmed.

The decision of the trial court is affirmed in part, reversed in part, and remanded as set forth above. Costs are taxed equally to Appellant Planters Gin and to Appellee Federal Compress, for which execution may issue if necessary.

> HOLLY KIRBY LILLARD, J.
> W. FRANK CRAWFORD, P.J., W.S.
> DAVID R. FARMER, J.

---

[2] Planters Gin does not argue that it is a thirty party beneficiary of the alarm services contract between Wells Fargo and Federal Compress, or that the alarm services contract gave rise to a "special relationship" between Wells Fargo and Planters Gin that would create an affirmative duty by Wells Fargo to act. *See Bradshaw v. Daniel*, 854 S.W.2d 865, 871 (Tenn. 1993) (citing, *inter alia*, Restatement (Second) of Torts § 315 (1964)). Consequently, we do not address these arguments in this appeal.