UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

AMERICAN HOME INSURANCE
COMPANY; ZURICH INSURANCE
COMPANY; ST. PAUL FIRE AND
MARINE INSURANCE COMPANY;
COMMONWEALTH INSURANCE
COMPANY; INTERESTED
UNDERWRITERS AT LLOYDS OF
LONDON; GERLING GLOBAL INSURANCE
COMPANY, as Subrogees of PCS
Phosphate Company, Incorporated,
           *Plaintiffs-Appellants,*

                  v.                          No. 00-1590

MONSANTO ENVIRO-CHEM SYSTEMS,
INCORPORATED,
           *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Malcolm J. Howard, District Judge.
(CA-99-28-4-H)

Argued: December 6, 2000

Decided: August 3, 2001

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge,
and William L. GARWOOD, Senior Circuit Judge of the
United States Court of Appeals for the Fifth Circuit,
sitting by designation.

_____

Affirmed by unpublished opinion. Senior Judge Garwood wrote the
opinion, in which Chief Judge Wilkinson and Judge Widener joined.

**COUNSEL**

**ARGUED:** Jay M. Goldstein, COZEN & O'CONNOR, Charlotte, North Carolina, for Appellants. Scott J. Szala, WINSTON & STRAWN, Chicago, Illinois, for Appellee. **ON BRIEF:** James L. Gale, SMITH, HELMS, MULLISS & MOORE, L.L.P., Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

GARWOOD, Senior Circuit Judge:

In this negligent failure to warn suit, plaintiffs-appellants American Home Insurance Co., Zurich Insurance Co., St. Paul Fire and Marine Insurance Co., Commonwealth Insurance Co., Interested Underwriters at Lloyd's of London and Gerling Global Insurance Co. (collectively, American) appeal the district court's grant of summary judgment in favor of defendant-appellee Monsanto Enviro-Chem Systems, Inc. (Enviro-Chem). We affirm.

*FACTS AND PROCEEDINGS BELOW*

In 1984-85, Enviro-Chem designed and built chemical plant number 6 for a company now known as PCS Phosphate Co. (PCS).[1] In 1992-93, Enviro-Chem designed and built a heat recovery system for plant number 6. On October 12, 1997, an implosion at plant number 6 caused the tower of the heat recovery system to collapse. A similar accident occurred in 1986 at another chemical plant (not owned by PCS) that had been designed and constructed by Enviro-Chem. After

---

[1]The corporation was known as Texasgulf at the time of the agreement to construct the heat recovery system. In 1995, PCS's parent company purchased Texasgulf's stock from Texasgulf's corporate parent.

investigating the 1986 accident, Enviro-Chem recommended to that plant's owner a change in the way it was operated.

American insured PCS's plant number 6. American paid PCS $5.6 million for the damage caused by the implosion. American claims that the cause of both accidents was a vacuum created by steam from a boiler leak, that Enviro-Chem knew of this risk and of procedures to minimize the risk, and failed to warn PCS of proper operating procedures. Accordingly, American seeks to exercise subrogation rights against Enviro-Chem to recover the amount it paid to PCS.

Enviro-Chem argues that American has waived its subrogation rights. Advancing this theory, Enviro-Chem moved for summary judgment against American. This motion was granted on April 6, 2000. American appeals.

## *DISCUSSION*

### I.  *Standard of Review*

This Court reviews the district court's grant of summary judgment *de novo. Deans v. CSX Transportation, Inc.*, 152 F.3d 326, 330 (4th Cir. 1998).

### II.  *Waiver of Subrogation Rights*

Paragraph 34 of plaintiff-appellant Gerling Global Insurance Co.'s policy with PCS provides, in relevant part:

> Any release from liability entered into by the Insured prior to loss shall not affect the right of the Insured to recover nor shall the Insurers have any right of subrogation against:
>
> . . . .
>
> (f)  Any other party for whom the Insured has agreed in writing to obtain such a waiver.

Similarly, paragraph 38 of the policy between PCS and all of the other plaintiffs-appellants provides, in relevant part:

Insurers on paying a loss hereby waive their right of subrogation against:

. . . .

(c) any other company and/or person and/or organization where the Insured has provided a waiver contractually.

The question, then, is whether PCS has agreed, in a written contract, to provide a waiver of subrogation in favor of Enviro-Chem. Article 8(B) of Enviro-Chem's contract with PCS to design and construct the heat recovery unit provides:

Owner [PCS] shall carry Builder's Risk Insurance "all risk" type coverage fully protecting Owner, Enviro-Chem, Leonard and their contractors and subcontractors as their interests may appear, against all physical loss or damage to the Plant, the Work, or any part thereof, and to all labor, material, equipment and other items incorporated into or intended for incorporation into any part of the Plant, or to be used in the course of the Work, while in transit to the site of the Plant, while at the site of the Plant, during erection and until completion and acceptance of the Work by the Owner pursuant to Paragraph A of Exhibit B hereto or until termination of this Agreement, whichever shall first occur. After such Builder's Risk Insurance shall have terminated, Owner shall maintain insurance covering, or assume the risk of, loss and damage to the Plant and the Work, however caused, and shall provide a waiver of subrogation in favor of Enviro-Chem and Leonard under such insurance.

The district court found that the subrogation waiver, encompassing "loss and damage to the Plant and the Work, however caused" was sufficiently broad to prevent American from having standing to assert its negligent failure to warn claim. American argues that: 1) the term "however caused" is ambiguous (and thus a trial is needed); 2) the district court erred in applying the familiar rule that ambiguities in a contract will be resolved against an insurance company to the waiver provision in the PCS Enviro-Chem contract; 3) to construe "however caused" to bar an assertion of subrogation rights in this case would

result in the subrogation waiver exceeding the scope of the "Work"; and 4) in any case, the subrogation waiver was only operative during the twelve month "shakedown" period immediately following completion of the heat recovery unit.

First, we find no ambiguity in the phrase "however caused". American may now be displeased that, through its policies with PCS and PCS's contract with Enviro-Chem, it has agreed to an unequivocal waiver of such breadth, but that it is so bound cannot now be called into question. Second, American is correct that the district court, in adopting Enviro-Chem's construction of the phrase "however caused", invoked the rule of *Lanning v. Allstate Insurance Co.*, 420 S.E.2d 180, 185 (N.C. 1992), wherein the North Carolina Supreme Court observed that if a term in an insurance policy is subject to more than one reasonable interpretation, any doubt about the meaning of that term will be resolved against the insurance company in favor of the policyholder. Specifically, the district court held that "[w]hen viewed under the standard articulated in *Lanning*, the court finds that 'however caused' is capable of but one interpretation, that of an all encompassing term that includes failure to warn." American argues that this rule should not be applied when the term in question appears in a contract negotiated by the counsel of two sophisticated corporations. *See Joyner v. Adams*, 361 S.E.2d 902, 905-906 (N.C. App. 1987). We have already explained that we find no ambiguity in the phrase "however caused", and thus have no occasion to consider the propriety of the district court's application of *Lanning*. In other words, because there is no doubt as to the correct interpretation of the phrase "however caused", it is not necessary to pass on the district court's reliance upon *Lanning*'s ambiguity rule. The judgment of the district court is clearly proper notwithstanding whether or not it was mistaken in the view that application of *Lanning* was appropriate.

Third, American is correct that waivers of subrogation should not be enforced outside of their context. American forcefully asserts that: 1) the subject of the Enviro-Chem-PCS contract was the design and construction of a heat recovery unit; 2) its common law negligent failure to warn claim does not arise from this contract and has nothing to do with the design or construction of the heat recovery unit; and 3) therefore, to bar American's exercise of subrogation rights here would be to enforce the waiver of subrogation outside of its context.

American opines that to apply the subrogation waiver here would require applying it if a truck operated by Enviro-Chem, not engaged in PCS-related business, crashed into PCS's plant. We disagree. Here, the alleged failure to warn concerned the operation of the heat recovery system that was the subject of the PCS-Enviro-Chem contract. This is quite different than the truck accident scenario presented by American. As mentioned, American is correct that, at some point, remoteness from the subject matter of the contract will prevent even an extremely broad subrogation waiver from operating. But American is incorrect that the alleged failure to warn here is so remote. The cases American cites for support are easily distinguished and, therefore, do not support its contention that its negligent failure to warn claim is outside the context of the PCS-Enviro-Chem contract.

*Continental Insurance Co. v. Faron Engraving Co.*, 179 A.D.2d 360, 361 (N.Y. App. Div. 1992), aptly observed that "a waiver of subrogation clause cannot be enforced beyond the scope of the specified context in which it appears". In *Continental*, the contract between the insured contained two relevant provisions. Paragraph Nine contained a subrogation waiver concerning damage to the premises which rendered the premises unusable. Paragraph Eight specifically held the landlord responsible for damage to the tenant's property resulting from the landlord's negligence. Because the insurer was alleging that the landlord's negligence had resulted in damage to the insured's property, the subrogation waiver concerning destruction of the premises did not apply. *Id*. Here, the subrogation waiver is broader and there is no competing provision that specifically holds Enviro-Chem responsible for damage resulting from its negligence.

*Town of Silverton v. Phoenix Heat Source System, Inc.*, 948 P.2d 9, 11 (Colo. Ct. App. 1997), involved narrow interpretation of a subrogation waiver found within a form contract drafted by the American Institute of Architects (AIA). In *Silverton*, the town contracted with the defendants for a new roof on the town hall. After the roof was completed, the town hall was damaged in a fire that the town contends was caused by the snow melting system which was designed, manufactured and supplied by one of the defendants. *Id*. at 11. The trial court granted the defendants' motion for summary judgment. The town made three arguments on appeal: 1) the waiver was limited spatially, i.e. to the new roof only; 2) the waiver was limited temporally,

to the period during construction; and 3) the waiver does not extend to breach of warranty or products liability causes of action. The *Silverton* court agreed only with the first argument. Like other courts interpreting the AIA form contract, it found that the subrogation waiver applied only to the construction work being performed under the contract.[2] This resulted in the subrogation waiver only applying to damage to the roof of the town hall. The PCS-Enviro-Chem subrogation clause explicitly applies to any damage to the *Plant* or the *Work* (which is the entire heat recovery system). Moreover, in disposing of the town's third contention, *Silverton* rejected the very argument that American now advances, namely that an unqualified subrogation waiver only applies to certain causes of action or types of claims. *Id.* at 13.

In *Interested Underwriters at Lloyds v. Ducor's, Inc.*, 103 A.D.2d 76, 77 (N.Y. App. Div. 1984), the court refused to enforce a broad waiver of subrogation clause when "the dereliction of duty with which the defendant is charged is completely extraneous to any duty or obligation encompassed by the parties' agreement and the relationship created thereunder." In *Ducor's*, the tenant's premises sustained fire damage as a result of a fire in a vacant, adjoining premises that just happened to be owned by the landlord. This fire was deemed an act unrelated to the landlord-tenant relationship and, therefore, the subrogation clause would not serve to shield the landlord. *Id.* at 79. Three things must be noted: 1) Judge Silverman's dissent is persuasive; 2) the court properly construed any ambiguity against the landlord, who supplied the form lease in question; and, most importantly, 3) the negligent failure to warn cause of action is not "completely extraneous" or "wholly unrelated" to the relationship between the parties that is contemplated by the PCS-Enviro-Chem agreement. Thus, even under *Ducor's*, subrogation is not proper here.

Finally, *S.S.D.W. Co. v. Brisk Waterproofing Co., Inc.*, 556 N.E.2d 1097 (N.Y. 1990), is another case involving interpretation of an

---

[2]The subrogation waiver provision in the AIA form contract provided that the parties waived all rights against each other, including subrogation, "for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant this Paragraph 11.3 or other property insurance applicable to the Work." *Id.*

American Institute of Architects form contract. Significantly, in *Brisk* the insurer's right of subrogation, i.e. its right to assert any claims its insured could assert, was not at issue. Rather, the issue was whether the insured had waived the claims against the defendant that the insurer was asserting.[3] The court held that the owner's waiver only applied to damages to the Work. *Id.* at 1098. Unlike the PCS-Enviro-Chem contract, the *Brisk* contract contained provisions requiring both the owner and the contractor to insure against certain risks of pre-completion loss. *Id.* at 1098-99. The contractor had to insure against damage its activities caused to parts of the building not constituting the Work. The owner had to insure the Work itself. *Id.* The contractor and owner waived all rights against each other for damages "to the extent covered by insurance obtained pursuant to this Article or any other property insurance applicable to the Work." *Id.* at 1098. The court interpreted this waiver as applying only to damages that the party was responsible for insuring against. *Id.* at 1100-01. In other words, the owner had waived only claims against contractor for damages the contractor caused to the Work. *Brisk* was relying on an insurance burden-sharing arrangement that is not present here. The PCS-Enviro-Chem contract places *all* of the risk of post-completion loss to the Plant and the Work with PCS or PCS's insurer. Thus, *Brisk* poses no barrier to affirmance.

Finally, American points to nothing in the PCS-Enviro-Chem contract that supports its contention that the subrogation waiver applied only during the twelve month "shakedown" period. A plain reading of Article 8(B) reveals that the waiver is operative after the Builder's Risk insurance terminates. The "shakedown" period is simply a twelve month period during which Enviro-Chem made certain workmanship and design guarantees. As mentioned, the issues of Enviro-Chem's potential liability to PCS and whether American has standing to assert any claims based thereon are separate and distinct. The workmanship and design guarantees set forth in Article 6(C) of the contract relate only to the former.

---

[3]For this reason, this case is much more relevant to our alternative holding in Part II, *infra*. We discuss *Brisk* here only to point out the error of American's reliance upon it as regards the subrogation issue.

Because American waived its right to subrogation, it lacked standing to assert any claims against Enviro-Chem on PCS's behalf.

### III.  *Enviro-chem's Lack of Liability to PCS*

In the alternative, even if American had standing to assert claims against Enviro-Chem on PCS's behalf, summary judgment for Enviro-Chem would still have been proper. This is because, in addition to agreeing in Article 8(B) to provide a waiver of subrogation on Enviro-Chem's behalf, PCS waived any claims, including negligence claims, against Enviro-Chem for damage to the Plant and the Work. Article 7(B) provides, in relevant part:

> Enviro-Chem and Leonard shall not be liable to Owner under this Agreement or otherwise for:
>
> . . . .
>
> 3.  After Enviro-Chem has either fulfilled or been relieved of its obligations hereunder, or after this Agreement shall have been terminated, and Enviro-Chem and its subcontractors have left the site of the Plant, Enviro-Chem and Leonard shall not thereafter be obligated or liable to Owner because of any loss or damage occurring to the Plant, the Work, or Owner's other facilities or property at, or adjacent to, the site of the Work.

Similarly, Article 14 provides, in relevant part:

> B.   Except to the extent covered by any insurance carried by Enviro-Chem pursuant to Article 8 hereof, Enviro-Chem and Leonard shall not be obligated or liable to Owner under this Agreement (including, without limitation, any guarantee or remedy hereunder) or otherwise for loss of use, loss of profits, business interruption or other consequential, indirect, special, incidental or punitive damages, however the same may be caused, including, without limitation, damages related to patent infringement, breach of contract, breach of warranty, misrepresentation or the negligent acts or omis-

sions, strict liability or other tort of Enviro-Chem or Leonard.

C.   Limitations of liability expressed in this Agreement shall apply even in the event of the fault, negligence or strict liability of Enviro-Chem or Leonard.

These provisions manifest the unmistakable intent of the parties that Enviro-Chem not be liable to PCS in the event of an accident such as occurred here, even if the accident results from a negligent act or omission on the part of Enviro-Chem related to or arising out of the construction or operation of the plant or the heat recovery system. Thus, even if American had standing to assert PCS's rights against Enviro-Chem, American could not recover because PCS had waived any and all rights that might have enabled recovery.

## *CONCLUSION*

In its policies with PCS, American waived its right to subrogation against any party that PCS had agreed to provide such a waiver for. In its contract with Enviro-Chem, PCS agreed to provide a subrogation waiver on Enviro-Chem's behalf for "loss and damage to the Plant and the Work, however caused". Accordingly, American does not have standing to assert claims against Enviro-Chem on PCS's behalf. Alternatively, even if American did have such standing, PCS has waived any right to recovery it may have had. The judgment of the district court is

*AFFIRMED*.