Garsh, E. Susan, J.
The plaintiff, Hartford Fire Insurance Company (“Hartford”), brings this action as subrogee of Sierra Plus Tango, LLC (“Sierra”). The defendant, E.M. Duggan, Inc. (“Duggan”), seeks summary judgment on the grounds that all the claims at issue have been waived. For the reasons set forth below, Duggan’s motion for summary judgment is allowed.
BACKGROUND
The relevant facts are not in dispute.
Sierra was the owner and developer of a condominium project in Cambridge (the “Project”). S&S Boston Construction LP (“S&S”) was the construction manager for the Project. Duggan was the plumbing subcontractor for the Project.
On November 29, 2007, before construction of the Project was complete, a water leak was discovered in one of the Project’s buildings. The leak was undetected until construction personnel arrived at the beginning of the work day and found water pouring out of the building. The leak caused substantial property damage. Hartford indemnified Sierra for its damages pursuant to the Builder’s Risk coverage in the insurance policy it had issued to Sierra (the “Policy”). Hartford is not aware of any uninsured damages to Sierra.
Paragraph J of the Policy explicitly allows Sierra to waive its right to recover from others prior to a covered loss, thereby eliminating the insurer’s right to recover as subrogee. In relevant part, it provides:
Transfer Of Rights Of Recovery Against Others To-Us
If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment . . . But you may waive your rights against another party in writing:
1. Prior to a loss to your Covered Property.
On May 4, 2005, prior to the loss to covered property occasioned by the leak, Sierra had entered into a contract for construction of the Project with S&S (the “Agreement”). Section 1.2 of the Agreement states, “For the Construction Phase, the General Conditions of the contract shall be the AIA_ Document A201TM— 1997, General Conditions of the Contract for Construction, as modified, which is attached hereto and incorporated herein by reference.” Section 11.4.7 of the General Conditions provides:
Waivers of Subrogation. The Owner and Contractor waive all rights against (1) each other and any of their subcontractors, subsubcontractors, agents and employees, each of the other . . . for damages caused by fire or other causes of loss to the extent covered by property insurance obtained pursuant to this Section 11.4 or other property insurance applicable to the Work . . .
On November 26, 2007, a different unit in the Project suffered a leak from a soldered plumbing connection for a shower mixing valve. The shower mixing valve is a device located behind the wall of the shower. No significant damage resulted from that leak because construction personnel were on site. Other units in the Project suffered shower valve leaks on September 12, 2008, June 11, 2010, and November 4, 2010, none of which resulted in significant damage.
On December 3, 2006, a shower valve installation leak occurred on a wholly unrelated Duggan project. For purposes of this motion, the court assumes that this leak caused significant damage to several apartments in that unrelated building, that it resulted from the failure of a solder joint in the bathroom of one of the units, and that Duggan was aware that this leak *635 had occurred before November 29, 2007. Duggan never warned Sierra that it had experienced a leak or leaks similar to the one at issue on other projects. For purposes of this motion, the court assumes that, if Duggan had advised Sierra that a similar leak or leaks on unrelated projects had resulted in property damage, Sierra would have taken precautions of some kind, such as off-hours monitoring of the building’s interior, so that any leak could be contained and not result in the kind of damage that occurred on November 29th.
The Amended Complaint contains three counts. Each count is brought by Hartford as the subrogee of Sierra. Count I, denominated as a claim for negligence, alleges that Duggan was negligent by improperly soldering the shower mixing valve that failed and that its work failed to meet the applicable standard of care for plumbing work. Count I alleges that such negligence was a proximate cause of Sierra’s damages. Count II, also denominated as a claim for negligence, alleges that Duggan had a problem with soldered joints leaking on other projects and that it negligently failed to warn Sierra or otherwise make recommendations to Sierra to prevent the leak at issue. Count II alleges that such negligence was a proximate cause of Sierra’s damages. Count III, brought under G.L.c. 93A, §11, alleges that Duggan committed an unfair or deceptive act or practice by failing to warn Sierra of Duggan’s problems with defective solder joints and that such conduct was a proximate cause of Sierra’s damages.
DISCUSSION
Waiver of subrogation provisions in construction contracts like the Agreement are recognized in Massachusetts, and Hartford does not contend otherwise. See, e.g., North American Specialty Insurance Co. v. Payton Construction Corp., 80 Mass.App.Ct. 367 (2011). Hartford does not argue that there is a public policy exception that exempts all chapter 93A claims from a waiver of subrogation clause. Furthermore, Hartford agrees with the defendant that the parties allocated the risk of Duggan’s poor workmanship to the insurer, in effect conceding that Duggan is entitled to summary judgment on Count I of the Amended Complaint.
With respect to the remaining counts, Hartford argues its claims survive because they fall outside the scope of the waiver in the Agreement. Citing Interested Underwriters at Lloyds v. Ducor’s, Inc., 103 A.D.2d 76, 77 (N.Y.App.Div. 1984), aff'd, 65 N.Y.2d 647 (1985), Hartford contends that, like the claim in that case, Counts II and III relate to a breach of a duly of care that is completely extraneous to any duty or obligation encompassed by the Agreement and the relationship created thereunder. Therefore, according to Hartford, Sierra’s right to bring these claims and its concomitant right to sue as subrogee of Sierra were not waived.
The interpretation of the Agreement is a question of law for the court. Cody v. Connecticut General Life Insurance company, 387 Mass. 142, 146 (1982). “In interpreting a contract, ‘[t]he objective is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.’ ” Rubin v. Murray, 79 Mass.App.Ct. 64, 75 (2011) (citations omitted). The application of contract language to known facts also presents a question of law. Weiler v. Portfolioscope, Inc., No. 12-P-261, slip op. (Mass.App.Ct., Feb. 1, 2013); 2013 Mass.App. Lexis 18 at *12 (Mass.App.Ct. Feb. 1, 2013).
No rational parsing of the Agreement permits the carving out of a negligent failure to warn claim or a chapter 93A claim premised on failure to warn from the scope of the waiver of subrogation clause in the Agreement. The Agreement contains no such explicit exception. It waives “all rights” of Sierra against S&S and its subcontractors for damages caused by “fire or other causes of loss” to the extent covered by property insurance. The negligent failure to warn and related chapter 93A claim is an alleged right of Sierra against a subcontractor of S&S, which are encompassed by the phrase “all rights” because they are alleged to be the “causes of loss” to Sierra.
Not only is the construction advanced by Hartford inconsistent with the language of the Agreement, it is also inconsistent with the purpose of the waiver of subrogation clause. “A waiver of subrogation is useful in [construction] projects because it avoids disruption and disputes among the parties to the project. It thus eliminates the need for lawsuits, and yet protects the contracting parties from loss by bringing all property damage under the all risks builder’s property insurance.” Haemonetics Corp. v. Brophy & Phillips Co., 23 Mass.App.Ct. 254, 258 (1986) (citation omitted). Nothing in the purpose of such clauses suggests a logical reason to differentiate between the doing of an act that causes property loss from the negligent failure to do an act, namely warn of a substantial risk of harm, that causes the same property loss. Were negligent failure to warn claims, but not negligent workmanship claims, allowed to proceed, the parties’ goal of avoiding disruption and disputes would be frustrated as would “the strong public policy to encourage parties to anticipate risks and procure insurance covering those risks, thereby avoiding future litigation.” MiddleOak Insurance Co. v. Tri-State Sprinkler Corp., 77 Mass.App.Ct. 336, 339 (2010). Had Hartford wished to protect itself against payments for losses caused by negligent failure to warn, it easily could have done so by inserting an exclusion into the Policy, raising premiums, or obtaining reinsurance. Id. at 339 n.5.
Nothing in Interested Underwriters at Lloyds, upon which Hartford relies, supports the proposition that the claims asserted by Hartford fall outside the scope of the waiver clause in the Agreement. In fact, that case directly supports Duggan’s position. In Interested Underwriters at Lloyds, the fire that caused the tenant-insured’s loss started in a building owned by the *636 tenant’s landlord that was adjacent to the building where the insured was a tenant. The tenant’s insurer, as subrogee, commenced an action for recovery of what it had paid out for the fire loss, alleging that the defendant’s negligence in the ownership, operation, maintenance and control of the adjoining premises was the sole cause of the fire. Id at. 77. In rejecting application of the waiver of subrogation clause in the lease, the court stated that “(w]hile, clearly, it was the intent of the parties to the lease in question to allocate to their respective insurers the risk of liability for any breach of any duty or obligation related to the landlord and tenant relationship, we are not persuaded that they expressed a similar intent with respect to liability unrelated to that relationship.” Id. at 78. The court held that “the dereliction of duty with which defendant is charged is completely extraneous to any duty or obligation encompassed by the parties’ agreement and the relationship created thereunder” and that “the loss claimed arises out of an act wholly outside the scope of the landlord and tenant relationship.” Id at. 77. By contrast, the dereliction of duty with which Duggan is charged is a duty to warn predicated upon and arising out of the owner-contractor/subcontractor relationship. The risk of loss from a subcontractor’s negligent failure to warn is in no sense extraneous to the owner-contractor/subcontractor relationship.[1]
In sum, Hartford asserts no claims in its Amended Complaint that were not waived by Sierra in the Agreement. Accordingly, Hartford’s claims are barred.
ORDER
For the foregoing reasons, it is hereby ORDERED that E.M. Duggan, Inc.’s Motion for Summary Judgment against Hartford Fire Insurance Company as subrogee of Sierra Plus Tango, LLC be ALLOWED and that judgment enter dismissing the Amended Complaint.

In the construction context, the holding in Interested Underwriters at Lloyds would be applicable if a subcontractor’s negligent performance on one project causes harm to a wholly different project upon which the contractor also may be working, such as might happen if a contractor working on Project A negligently discards a tool out of a window that smashes into a building in Project B. In such a case, Project B’s insurer would not be barred from suing the contractor by a virtue of a waiver of subrogation clause in an agreement between the owner of Project B and the contractor.