IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2020 Session

## ANTAVEON WALLER v. VARANGON CORPORATION D/B/A VARANGON ACADEMY, ET AL

**Appeal from the Circuit Court for Shelby County**
**No. CT-003592-17  Felicia Corbin Johnson, Judge**

———————————————————

**No. W2019-02211-COA-R3-CV**

———————————————————

This case stems from injuries suffered by a minor while he was a resident at a juvenile treatment facility.  The plaintiff initially filed suit against the former owner and operator of the facility.  Nearly a year later, the plaintiff amended his complaint to include the party that owned and operated the facility during the relevant time period.  Both of the defendants moved for summary judgment.  The trial court granted summary judgment for the original defendant, in part, because it found that the original defendant did not owe a duty of care to the plaintiff at the time the alleged injuries occurred.  The court granted summary judgment for the second defendant because the plaintiff failed to include the party in the suit within the applicable statute of limitations.  After the trial court denied the plaintiff's post-judgment motion to set aside its ruling, the plaintiff appealed.  We affirm the trial court's ruling and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and J. STEVEN STAFFORD, P.J., W.S., joined.

Terrell L. Tooten, Cordova, Tennessee, for the appellant, Antaveon Waller.

Lewis W. Lyons, Memphis, Tennessee, for the appellee, Varangon Corporation d/b/a Varangon Academy.

Jeffrey M. Beemer and Talor I. Bearman, Nashville, Tennessee, for the appellee, Omni Visions, Inc.

**OPINION**

## I. FACTS AND PROCEDURAL HISTORY

From 2010 through 2013, Varangon Corporation ("Varangon") owned and operated a juvenile treatment facility in Bartlett, Tennessee ("the Facility"). The Facility—known as "Varangon Academy"—was located at 3030 Brunswick Road, Bartlett, TN. The Facility specialized in social, behavioral, and correctional services for troubled youth. As part of these services, Varangon developed a treatment model known as the Directive Therapy System program model ("DTS model"). The DTS model was designed and implemented to help provide behavioral services for adolescents who are acting out.

In January 2014, Varangon and Omni Visions, Inc. ("OVI") entered into an asset purchase agreement. Under the purchase agreement, Varangon sold the Facility and the business operated therein to OVI. As part of the purchase agreement, Varangon retained the trade name "Varangon Academy." Also in January 2014, Varangon and OVI entered into a management services agreement. Under the management services agreement, OVI agreed to continue to provide residential treatment and other services to juveniles at the Facility. In doing so, Varangon agreed to license the use of the DTS model to OVI for its use at the Facility. The management services agreement stated that after the sale of the Facility, Varangon's assistance in operating the Facility was focused on the administration of the DTS model that was being used by OVI.

As part of its assistance in coordinating the use of the DTS model, Varangon also provided recommendations on personnel issues such as hiring, training, and operating procedures. While Varangon helped make recommendations, according to Dr. Robert Wood, the President of Varangon, OVI retained final decision-making authority over personnel issues. After the sale of the Facility and the business to OVI, substantially all of the Varangon employees became OVI employees and continued to work at the Facility. Administrative staff members, such as the Program Director and CEO of Varangon, were retained by Varangon. Pursuant to the management services agreement, OVI retained "ultimate legal responsibility, authority and responsibility over the rendition of all residential treatment services at the Facilit[y]."

In April and May 2016, Antaveon Waller ("Plaintiff"),[1] who was seventeen years old at the time, was a resident of the Facility.[2] While he was a resident at the Facility, Plaintiff began experiencing abdominal pain and nausea. Plaintiff reported his discomfort to medical personnel at the Facility. The nurses who provided care for Plaintiff stated that they gave Plaintiff over-the-counter treatments to alleviate his pain, but his condition

---

[1] Plaintiff's complaint and several of the pleadings in the record list Plaintiff as "Antaveon Waller aka Antaveon Miller." Counsel for Plaintiff explained that Plaintiff uses both last names.

[2] Plaintiff turned eighteen years old on March 30, 2017.

worsened. After several days, Plaintiff's condition worsened to the point where he was transported to a local emergency room for an evaluation. At the hospital, Plaintiff was diagnosed with a bowel obstruction and underwent surgery that required the removal of a portion of his small intestine.

As a result of his injuries and subsequent surgery, on August 29, 2017, Plaintiff filed suit against "Varangon Corporation or Varangon Academy" under the Tennessee Healthcare Liability Statute. *See* Tenn. Code Ann. § 29-26-101 *et seq*. Prior to filing suit, in June 2016, Plaintiff sent pre-suit notice under Tennessee Code Annotated section 29-26-121(a) to the registered agent for Varangon, labeling the recipient as "Varangon Academy."

Varangon answered Plaintiff's complaint on February 14, 2018. In its answer, Varangon affirmatively stated that it was not the owner or operator of the Facility at the time Plaintiff suffered his alleged injuries. Instead, it claimed that OVI owned and operated the Facility at the time Plaintiff allegedly sustained his injuries. In its answer, Varangon included comparative fault as an affirmative defense. In its response to Plaintiff's interrogatories, Varangon also stated that any medical staff or other personnel who treated Plaintiff for his illnesses were not employed by Varangon.

On June 19, 2018, Varangon filed a motion for summary judgment. In its motion, Varangon asserted that it did not own the Facility or provide care for Plaintiff at the time he sustained his injuries. As a result, Varangon argued that the undisputed facts showed that Plaintiff would be unable to establish the essential elements of duty and causation. Varangon's motion for summary judgment was supported by a Rule 56.03 statement of undisputed facts; a copy of the Varangon-OVI management services agreement; an affidavit from Dr. Wood; and a memorandum of law.

Plaintiff filed a response to Varangon's motion for summary judgment and a response to Varangon's statement of undisputed facts. Plaintiff claimed that even after the sale of the Facility to OVI, Varangon provided management and operational services. Accordingly, he argued that Varangon was still liable for Plaintiff's injures despite no longer owning the Facility.

On July 17, 2018, (more than five months after Varangon filed its answer to Plaintiff's complaint) Plaintiff filed a motion to amend his complaint in order to add OVI as a defendant. Before filing this motion, on June 11, 2018, Plaintiff sent pre-suit notice of his intent to file suit to the former CEO of OVI.[3] On July 30, 2018, Plaintiff amended his complaint, adding OVI as a defendant. On September 14, 2018, OVI filed its answer

---

[3] OVI stated that its registered agent for service of process was DW Services of Tennessee, LLC. Whether Plaintiff sent the pre-suit notice to the correct agent of OVI does not affect our analysis in this appeal.

to the amended complaint. In its answer, OVI claimed that Plaintiff's amended complaint was untimely because it was filed outside of the applicable statute of limitations.

On November 2, 2018, OVI filed a motion for summary judgment. In its motion and supporting materials, OVI claimed that Plaintiff's amended complaint was not timely filed.

The trial court heard both motions for summary judgment on January 25, 2019. At the conclusion of the hearing, the trial court granted both defendants' motions for summary judgment. On August 21, 2019, the court entered two written orders on its grants of summary judgment to Varangon and OVI.

In the order granting Varangon's motion for summary judgment, the trial court found that Varangon did not own or operate the Facility at the time of the alleged negligent conduct. It also found that Varangon did not employ any of the nurses who provided medical care to Plaintiff and that Varangon did not train OVI employees who were employed to perform medical services. Instead, the court found that the nurses who provided care for Plaintiff were employed solely by OVI. Additionally, the court found that any operational staff retained by Varangon after OVI purchased the Facility did not include nurses and other medical support staff. Because Varangon did not own the Facility and did not control its workers, the trial court found that Varangon did not owe a duty to diagnose or treat Plaintiff's medical issues. Based on these findings, the court concluded that Plaintiff failed to establish the essential element of duty against Varangon. Due to a lack of competent testimony on the applicable standard of care, the court also concluded that Plaintiff failed to establish causation against Varangon. Accordingly, the court dismissed Plaintiff's claims against Varangon with prejudice and entered summary judgment in favor of Varangon.

In a separate order granting OVI's motion for summary judgment, the trial court found that the statute of limitations on Plaintiff's claim against OVI ran on March 30, 2018, one year after his eighteenth birthday. It also found that Plaintiff did not file his amended complaint until July 30, 2018, more than 90 days after Varangon indicated in its answer that OVI owned and operated the Facility. Although Plaintiff sent pre-suit notice of his claim to Varangon on June 10, 2016,[4] the court found that he failed to provide proper notice to OVI at least 60 days before it was added to the suit by Plaintiff's amended complaint. Because Plaintiff failed to give proper pre-suit notice to OVI, the court concluded that the statute of limitations was not extended 120 days pursuant to Tennessee Code Annotated section 29-26-121(a). Therefore, the court found that Plaintiff's amended complaint, as it

---

[4] It appears that in the trial court's order granting OVI summary judgment, the court inadvertently stated Plaintiff sent pre-suit notice to Varangon on June 20, 2016. Previous portions of the court's order states that the notice was sent on June 10, 2016. Additionally, Plaintiff's original complaint states the notice was sent on June 15, 2016. However, a copy of the notice and other correspondence between counsel for Plaintiff and Varangon indicate that the notice was dated June 10, 2016.

- 4 -

related to OVI, was untimely. Because Plaintiff included OVI in the suit more than one year after the statute of limitations had run, the trial court found that Plaintiff's claims against OVI were time-barred. Additionally, the court found that Plaintiff failed to timely include OVI within 90 days of Varangon indicating OVI was at fault under Tennessee Code Annotated section 20-1-119. Because Plaintiff failed to include OVI within the statute of limitations or within 90 days of Varangon indicating OVI was at fault, the trial court entered summary judgment in favor of OVI.

On August 23, 2019, the trial court entered its final order, dismissing all of Plaintiff's claims with prejudice.[5]

Later, Plaintiff filed a post-judgment motion for relief from the trial court's grants of summary judgment. Plaintiff requested relief under Rules 52.02, 59.04, 59.07, and 60.02 of the Tennessee Rules of Civil Procedure.[6] In his motion, Plaintiff claimed that counsel for Varangon and OVI improperly allowed Varangon to file an answer on behalf of "Varangon Academy" while waiting to disclose that OVI owned and operated the facility. Plaintiff also claimed that, in regards to OVI, its amended complaint related back to the original time of filing under Tennessee Rule of Civil Procedure 15.03. The trial court disagreed and denied Plaintiff's motion.[7]

Plaintiff timely appealed.

## II.    ISSUES PRESENTED

Plaintiff presents two issues on appeal, which we have copied verbatim:

1. Whether the trial court erred when it granted Defendants' motions for summary judgment; and

2. Whether the trial court erred when it denied Plaintiff's motion to set aside.

In addition to the issues stated by Plaintiff, Varangon raises one issue:

---

[5] On August 23, 2019, the trial court also entered an order granting a motion to dismiss Patricia Spence as a defendant. Ms. Spence was a registered nurse at the Facility who was added as a defendant in Plaintiff's amended complaint. A suggestion of death, filed on August 1, 2018, indicated that Ms. Spence passed away on July 12, 2018. The motion to dismiss Ms. Spence as a defendant was unopposed.

[6] Although not pertinent to this appeal, we note that Plaintiff's requests for relief under Rules 52.02 and 59.07 were erroneous. Rule 52.02 pertains to bench trials, *see* Tenn. R. Civ. P. 52.02, and Rule 59.07 is reserved for motions for a new trial. *See* Tenn. R. Civ. P. 59.07. This case never proceeded to the trial phase.

[7] In the trial court's final order, it stated that the transcript from the hearing on Plaintiff's motion for post-judgment relief shall be incorporated into the order if it was filed within ten days of the order being entered. While the transcript was eventually filed, it was not filed until February 11, 2020, well beyond ten days of the order's entry on November 15, 2019.

3. Whether Plaintiff's appeal is frivolous.

### III.   STANDARDS OF REVIEW

A trial court's decision on a motion for summary judgment is reviewed *de novo* with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019) (citing *Beard v. Branson*, 528 S.W.3d 487, 494-95 (Tenn. 2017)).  On appeal, we must "make a fresh determination about whether the requirements of Rule 56 have been met." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 887 (Tenn. 2019) (citing *Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 250 (Tenn. 2015)).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

A moving party who does not bear the burden of proof at trial can meet its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *TWB Architects, Inc.*, 578 S.W.3d at 887 (quoting *Rye*, 477 S.W.3d at 264).  Then, "[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Id.* at 889 (quoting *Rye*, 477 S.W.3d at 265).  We accept the evidence presented by the nonmoving party as true, allow all reasonable inferences in its favor, and resolve any doubts about the existence of a genuine issue of material fact in its favor. *Id.* at 887.

A trial court's decision on a Rule 59.04 motion is reviewed under an abuse of discretion standard. *Kirk v. Kirk*, 447 S.W.3d 861, 870 (Tenn. Ct. App. 2013); *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003) (citing *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998)).  "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

### IV.   DISCUSSION

At the trial court level, the motions for summary judgment by Varangon and OVI were presented separately, rested on separate grounds, and were granted in two distinct orders.  Therefore, we shall discuss each motion for summary judgment in turn.

### A.  Varangon – Duty

In every negligence action, the plaintiff bears the burden of proof on five essential elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of the duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). Similarly, Tennessee Code Annotated section 29-26-115(a) lists the requirements for a plaintiff to prove in order to be successful in bringing a healthcare liability action:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a). While section 29-26-115(a) does not explicitly require a plaintiff to prove that a defendant owed a duty of care, Tennessee courts have previously stated that the section is a codification of the common law of negligence. *See Kelly v. Middle Tenn. Emergency Physicians*, 133 S.W.3d 587, 592 (Tenn. 2004). Meaning, in order to succeed on a healthcare liability claim, a plaintiff must prove that the defendant owed him or her a duty of care. *See id.*

In the present case, Plaintiff's cause of action is presented as a vicarious liability claim. Plaintiff claimed that Varangon is responsible for the alleged negligent actions of the nurses who provided care to Plaintiff. "[U]nder the doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by its employee within the course and scope of his or her employment." *Gunter v. Estate of Armstrong*, 600 S.W.3d 916, 923 (Tenn. Ct. App. 2019) (quoting *Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 735 (Tenn. Ct. App. 2018)). In order for an employer to be held liable, "the plaintiff must prove (1) that the person who caused the injury was an employee, (2) that the employee was on the employer's business, and (3) that the employee was acting within the scope of his employment when the injury occurred." *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992) (citing *Hamrick v. Spring City Motor Co.*, 708 S.W.2d 383, 386 (Tenn. 1986); *Midwest Dairy Prods. Co. v. Esso Standard Oil Co.*, 246 S.W.2d 974, 975 (Tenn. 1952)); *see also Gunter*, 600 S.W.3d at 923.

Despite Plaintiff's repeated and adamant protests to the contrary, Varangon did not own the business at the time Plaintiff was a resident of the Facility, nor did it control the medical personnel who provided Plaintiff care. It is clear that Varangon sold the business and the Facility to OVI in January 2014. In conjunction with the sale, OVI agreed to

provide the residential treatment services for juveniles at the Facility. The undisputed evidence shows that Varangon's involvement after the sale to OVI only related to OVI's use of the DTS model at the Facility. Although Varangon made recommendations to OVI on personnel issues, OVI had sole and final authority on these issues. The nurses and other medical personnel who provided care to Plaintiff were employees of OVI, not Varangon. The management services agreement between Varangon and OVI, the affidavit of Dr. Wood, and the deposition testimony of the several witnesses all support these findings.

The management services agreement clearly states that OVI "retain[ed] ultimate legal responsibility, authority and responsibility over the rendition of all residential treatment services at the Facilit[y]." Plaintiff argues that Dr. Rebecca West (an employee retained by Varangon after the sale to OVI) was responsible for supervising the medical staff. However, he gives no specific citation to the record to support this assertion. To the contrary, the evidence shows that Varangon did not provide training on medical services and that Dr. West was a psychologist, not a medical doctor. The nurses and their supervisors who provided medical care to Plaintiff were employees of OVI at the time of the alleged incident.

It is evident that none of the employees who provided medical care for Plaintiff were employed, trained, or controlled by Varangon. Therefore, Varangon cannot be held liable for their alleged negligent actions. *See Tenn. Farmers Mut. Ins. Co.*, 840 S.W.2d at 937 (stating that in order for an employer to be held liable, "the person who caused the injury [must be] an employee"). We agree with the trial court that Varangon did not owe a duty to diagnose or treat potential medical conditions suffered by Plaintiff. Plaintiff has presented no evidence to show the existence of specific facts that would negate this conclusion. *See TWB Architects, Inc.*, 578 S.W.3d at 889.[8] As such, we affirm the trial court's decision to grant summary judgment in favor of Varangon.[9]

Because we find that Varangon did not owe a duty to Plaintiff, the issue of whether Varangon was the cause of Plaintiff's injuries is pretermitted.

---

[8] Plaintiff claims that several additional facts that he listed in his response to Varangon's statement of material facts were "deemed admitted" because Varangon did not file a countervailing response. Aside from quoting a portion of Tennessee Rule of Civil Procedure 56.03, Plaintiff provided no citation for this assertion. "As can be discerned from the plain text of the rule, [a] moving party is allowed to respond to the non-moving party's statement of additional facts but *is not required* to issue a response." *Rogers ex rel. Wright v. Autozone Stores, Inc.*, No. M2011-02606-COA-R3-CV, 2012 WL 3594342, at *9 (Tenn. Ct. App. Aug. 21, 2012) (emphasis added). As in *Rogers*, "[w]e decline to hold that a moving party's failure to issue a response deems the non-moving party's statement of facts admitted when the moving party is not required to issue a response." *Id.*

[9] We also note that, despite the Facility being referred to as "Varangon Academy," Varangon's retention and use of this trade name does not alter our analysis. "[A]n entity doing business under a trade name does not have a legal existence and is not capable of being sued." *Burks v. Belz-Wilson Props.*, 958 S.W.2d 773, 776 (Tenn. Ct. App. 1997).

### B. Omni Visions, Inc. – Timeliness of the Action

After Plaintiff eventually amended his complaint to add OVI as a defendant, OVI asserted in its answer that it was added beyond the applicable statute of limitations. The Supreme Court has noted several important purposes of a statute of limitations:

(1) promote stability in personal and business relationships, (2) give notice to defendants of potential lawsuits, (3) prevent undue delay in filing lawsuits, (4) avoid the uncertainties and burdens inherent in pursuing and defending stale claims, and (5) ensure that evidence is preserved and facts are not obscured by the lapse of time or the defective memory or death of a witness.

*Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 456 (Tenn. 2012) (citations and quotation marks omitted). "[C]ourts construe exceptions to statutes of limitations carefully to assure that they are not extended beyond their plain meaning." *Id.*

Tennessee Code Annotated section 29-26-116(a)(1) states that "[t]he statute of limitations in health care liability actions [is] one (1) year." However, the General Assembly has recognized various tolling doctrines that extend the running of a limitations period. *Redwing*, 363 S.W.3d at 459. For instance, if a person is under eighteen years of age at the time the action accrued, the person may commence the action up to one year after he or she reaches the age of majority. *See* Tenn. Code Ann. § 28-1-106; *Redwing*, 363 S.W.3d at 459.

Plaintiff was seventeen years old at the time he allegedly suffered his injuries. He turned eighteen years of age on March 30, 2017. Thus, he had up until his nineteenth birthday on March 30, 2018, to commence an action related to his alleged injury. *See* Tenn. Code Ann. § 28-1-106; *Redwing*, 363 S.W.3d at 459. While Plaintiff timely filed an action against Varangon in August 2017, he did not amend his complaint to add OVI until July 30, 2018. As a result, unless Plaintiff is entitled to an extension of time, his amended complaint was untimely.

In cases involving a healthcare liability claim, plaintiffs are required to give written notice of their claim to each potential defendant-healthcare provider at least 60 days before filing a complaint. Tenn. Code Ann. § 29-26-121(a)(1); *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 331 (Tenn. 2020). When proper notice is given, to a healthcare provider within the applicable statutes of limitations and statutes of repose, the statute of limitations is extended for 120 "days from the date of expiration of the statute of limitations and statute of repose *applicable to that provider*." Tenn. Code Ann. § 29-26-121(c) (emphasis added).[10] However, once a complaint is filed alleging a claim for healthcare

---

[10] *See id.* (stating when proper notice is given, the statute of limitations is extended for 120 days); *Runions v. Jackson-Madison Cty. Hosp. Dist.*, 549 S.W.3d 77, 89 (Tenn. 2018) (holding that a plaintiff who

liability, pre-suit notice is not required for "any person or entity that is made a party to the action thereafter by amendment to the pleadings as a result of a defendant's alleging comparative fault." Tenn. Code Ann. § 29-26-121(c).

OVI was made a party to the action by virtue of the amended complaint. As a result, pre-suit notice was not required for OVI. However, Plaintiff has repeatedly argued that the pre-suit notice given to Varangon in June 2016 imputed notice to OVI and thereby extended the applicable statute of limitations for 120 days. We disagree. In June 2016, Plaintiff sent pre-suit notice to "Varangon Academy" at the address for Varangon Corporation. Assuming Plaintiff's pre-suit notice to Varangon was proper, it was not sufficient notice to OVI to extend the statute of limitations. It is clear from the record that Varangon and OVI are separate entities. Dr. Wood's deposition testimony clearly states that Varangon and OVI do not share corporate affiliations. Further, the trial court found that the companies do not have common owners, officers, directors, or board members. Because Plaintiff's original pre-suit notice only applied to Varangon, it did not extend the time to file suit against OVI for 120 days beyond the statute of limitations.[11]

Plaintiff also argues that the true owner of the Facility at the time of the incident is a disputed fact. However, aside from Plaintiff's refusal to acknowledge the evidence, we fail to see how the identity of the owner can be a disputed fact. The record is clear. OVI acquired the Facility and the business operated therein when the companies executed the asset purchase agreement. The purchase agreement was executed in January 2014, more than two years before Plaintiff was a resident of the Facility. As we have explained, Varangon's use of the trade name "Varangon Academy" does not make "Varangon Academy" a legal entity that is capable of acting on behalf of another party. *See Burks*, 958 S.W.2d at 776 (stating "an entity doing business under a trade name does not have a legal existence and is not capable of being sued").

In his appellate brief, Plaintiff does not provide an argument on an application of Tennessee Code Annotated section 20-1-119(a). Therefore, to the extent this section may apply, we deem waived any arguments regarding amendment of the complaint pursuant to

---

fails to give pre-suit notice under section 29-26-121(a)(1) cannot rely on the 120-day extension under section 29-26-121(c)).

[11] Plaintiff apparently misapprehends the statutory pre-suit notice requirements. Although pre-suit notice was not required for OVI, Plaintiff sent a separate pre-suit notice to OVI on June 11, 2018, which was after both the expiration of the statute of limitations and any possible applicable extension as a result of Varangon's answer alleging comparative fault. Plaintiff then amended his complaint to add OVI as a defendant on July 30, 2018, less than 60 days after sending the unnecessary notice to OVI. As a result, Plaintiff's pre-suit notice to OVI in June 2018, and subsequent amended complaint, would not have complied with the time requirements of section 29-26-121(a) under any possible scenario. "Strict compliance with the pre-suit notice provision is required; substantial compliance is insufficient." *Runions*, 549 S.W.3d at 86; *see also DePue v. Schroeder*, No. E2010-00504-COA-R9-CV, 2011 WL 538865, at *8-9 (Tenn. Ct. App. Feb. 15, 2011) (dismissing the complaint for failure to wait 60 days after the pre-suit notice was sent to file suit).

the provisions of section 20-1-119(a). *See Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010) (stating "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived"); *see also Rountree v. Rountree*, 369 S.W.3d 122, 135 (Tenn. Ct. App. 2012) (stating that the failure to cite authority or construct an argument on appeal constitutes waiver of the issue).

Based on the foregoing discussion, we affirm the trial court's decision to enter summary judgment in favor of OVI. Plaintiff's claims against OVI were properly dismissed for being presented beyond the statute of limitations.

### C. Motion to Set Aside

At the outset, we note that Plaintiff's brief includes an extensive discussion on Tennessee Rule of Civil Procedure 60.02 but does not mention Rule 59.04. Post-judgment motions made under Rule 59.04 and Rule 60.02 are similar but occur under distinctly different circumstances. In either circumstance, a party may seek relief from a judgment due to "mistake, inadvertence, or excusable neglect." *See* Tenn. R. Civ. P. 60.02(1); *Pryor v. Rivergate Meadows Apartments Assocs. Ltd. P'ship*, 338 S.W.3d 882, 885 (Tenn. Ct. App. 2009). However, the allowable time periods to present each motion differ. Rule 59.04 allows a party to seek relief before the time period to file an appeal has run; "conversely, Rule 60.02 affords a party a means to seek relief from a final, non-appealable judgment." *Ferguson v. Brown*, 291 S.W.3d 381, 387 (Tenn. Ct. App. 2008). Stated differently, "Rule 59.04 is appropriate for a party seeking relief from a judgment that is not yet final," and Rule 60.02 provides relief from final judgments. *Thigpen v. First City Bank*, No. 27349, 1997 WL 351247, at *2 (Tenn. Ct. App. June 27, 1997). Although these motions are appropriate at different points of litigation, the mislabeling of a motion is not fatal to the moving party. *See Estate of Doyle v. Hunt*, 60 S.W.3d 838, 842 (Tenn. Ct. App. 2001) (stating "trial court[s] [are] not bound by the title of a pleading").

The trial court entered its final order of dismissal on August 23, 2019. On September 23, 2019, Plaintiff filed his "Motion to Set Aside" the court's grants of summary judgment. Although Plaintiff filed his motion 31 days after the trial court's final judgment was entered, the time period to file an appeal had not yet lapsed because the thirtieth day after the final judgment, September 22, 2019, was a Sunday. *See* Tenn. R. App. P. 4(a) (stating the allowable time to file an appeal as of right is within 30 days of the trial court entering its final judgment); Tenn. R. App. P. 21(a) (stating if the last day of a time period designated in the rules of appellate procedure falls on a Sunday, the allowable time period extends to the end of the next available day). Because Plaintiff filed his motion within the allowable time to file an appeal, we shall treat the motion as a Rule 59.04 motion, despite him labeling it as a Rule 60.02 motion. *See Estate of Doyle*, 60 S.W.3d at 842.

In his brief, Plaintiff fails to adequately explain how the trial court abused its discretion in denying his post-judgment motion to set aside its ruling. Similar to his initial motion, Plaintiff uses this portion of his brief as an opportunity to re-litigate the issues in this case. Such a tactic is not a proper use of Rule 59.04. *Burris v. Burris*, 512 S.W.3d 239, 247 (Tenn. Ct. App. 2016) (stating "Rule 59.04 motions are not opportunities to re-litigate the issues previously adjudicated at trial").

The majority of Plaintiff's argument in this section focuses on the notion that counsel for Varangon must have had the authority to act for OVI because the trade name "Varangon Academy" was used in Varangon's filings. We have discussed this issue several times, but we again state that the use of a trade name does not create a legal entity that is capable of being sued or capable of acting on behalf of another party. *See Burks*, 958 S.W.2d at 776.

In his motion to set aside, Plaintiff argued that the trial court should have conducted its analysis under the "relation back" portion of Tennessee Rule of Civil Procedure 15.03. However, Plaintiff did not sufficiently present this as a standalone argument in his response to OVI's motion for summary judgment. As a result, he waived any application of Rule 15.03 on appeal. *See Rountree*, 369 S.W.3d at 134 (citing *Waters v. Farr*, 291 S.W.3d 873, 918 (Tenn. 2009) ("Issues may be waived on appeal by the failure to present them at trial.").

For these reasons, we see no basis for concluding that the trial court abused its discretion in denying Plaintiff's post-judgment motion. *See Kirk*, 447 S.W.3d at 870.

### D. *Whether this Appeal is Frivolous*

In its brief, Varangon asserts that Plaintiff's appeal is frivolous and that, as a result, monetary sanctions should be levied against him. We disagree. *See* Tenn. Code Ann. § 27-1-122 (2019); *Selitsch v. Selitsch*, 492 S.W.3d 677, 690 (Tenn. Ct. App. 2015) (stating "[a] frivolous appeal is one that is devoid of merit or has no reasonable chance of success"). We decline Varangon's request to levy monetary sanctions against Plaintiff for bringing this appeal.

### V.    CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to appellant, Antaveon Waller, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

- 12 -